**In re Maida Yetter**

*Renald S. Baratta,* for petitioner.
*Ralph W. Litzenberger,* for alleged incompetent.

WILLIAMS, J., June 6, 1973.—This matter involves the appointment of a guardian of the person for Maida Yetter, an alleged incompetent, under the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, as amended, 50 PS §3101, et seq. The petition was filed by Russell C. Stauffer, her brother, and a citation issued on May 10, 1973. The citation was served on the alleged incompetent by a deputy sheriff of Lehigh County at Allentown State Hospital, Lehigh County, Pa., on May 15, 1973. A hearing was held on May 30, 1973, as specified in the petition. Present at the hearing were petitioner and his counsel; Dr. Ellen Bischoff, a psychiatrist on the staff of the hospital; Mrs. Marilou Perhac, a caseworker at the hospital assigned to Mrs. Yetter's ward; the alleged incompetent and her counsel. Mrs. Yetter is married, although she has been separated from, and has had no contact with, her husband since 1947.

From the petition and the testimony it appears that the primary purpose of the appointment of a guardian

of the person is to give consent to the performance of diagnostic and corrective surgery.

Mrs. Yetter was committed to Allentown State Hospital in June 1971, by the Courts of Northampton County after hearings held pursuant to section 406 of the Mental Health and Mental Retardation Act of October 20, 1966, Sp. Sess., P. L. 96, 50 PS §4406. Her diagnosis at that time was schizophrenia, chronic undifferentiated. It appears that late in 1972, in connection with a routine physical examination, Mrs. Yetter was discovered to have a breast discharge indicating the possible presence of carcinoma. The doctors recommended that a surgical biopsy be performed together with any additional corrective surgery that would be indicated by the pathology of the biopsy. When this recommendation was first discussed with Mrs. Yetter in December of 1972 by her caseworker, Mrs. Perhac, who has had weekly counseling sessions with Mrs. Yetter for more than a year, Mrs. Yetter indicated that she would not give her consent to the surgery. Her stated reasons were that she was afraid because of the death of her aunt which followed such surgery and that it was her own body and she did not desire the operation. The caseworker indicated that at this time Mrs. Yetter was lucid, rational and appeared to understand that the possible consequences of her refusal included death.

Mr. Stauffer, who indicated that he visits his sister regularly, and Dr. Bischoff, whose direct contacts with Mrs. Yetter have been since March 1973, testified that in the last three or four months it has been impossible to discuss the proposed surgery with Mrs. Yetter in that, in addition to expressing fear of the operation, she has become delusional in her reasons for not consenting to surgery. Her tendency to become delusional concerning this problem, although no others,

was confirmed by Mrs. Perhac. The present delusional nature of Mrs. Yetter's reasoning concerning the problem was demonstrated at the hearing when Mrs. Yetter, in response to questions by the court and counsel, indicated that the operation would interfere with her genital system, affecting her ability to have babies, and would prohibit a movie career. Mrs. Yetter is 60 years of age and without children.

Dr. Bischoff testified that Mrs. Yetter is oriented as to time, place and her personal environment, and that her present delusions are consistent with the diagnosis and evaluation of her mental illness upon admission to the hospital in 1971. The doctor indicated that, in her opinion, at the present time Mrs. Yetter is unable, by reason of her mental illness, to arrive at a considered judgment as to whether to undergo surgery.

Mr. Stauffer testified that the aunt referred to by Mrs. Yetter, although she underwent a similar operation, died of unrelated causes some 15 years after surgery. He further indicated that he has been apprised by the physicians of the nature of the proposed procedures and their probable consequences as well as the probable consequences if the procedures are not performed. He indicated that if he is appointed guardian of the person for his sister, he would consent to the surgical procedures recommended.

At the hearing Mrs. Yetter was alert, interested and obviously meticulous about her personal appearance. She stated that she was afraid of surgery, that the best course of action for her would be to leave her body alone, that surgery might hasten the spread of the disease and do further harm, and she reiterated her fears due to the death of her aunt. On several occasions during the hearing she interjected the statements that she would die if surgery were performed.

It is clear that mere commitment to a State hospital for treatment of mental illness does not destroy a person's competency or require the appointment of a guardian of the estate or person: Ryman's Case, 139 Pa. Superior Ct. 212. Mental capacity must be examined on a case by case basis.

In our opinion, the constitutional right of privacy* includes the right of a mature competent adult to refuse to accept medical recommendations that may prolong one's life and which, to a third person at least, appear to be in his best interests; in short, that the right of privacy includes a right to die with which the State should not interfere where there are no minor or unborn children and no clear and present danger to public health, welfare or morals. If the person was competent while being presented with the decision and in making the decision which she did, the court should not interfere even though her decision might be considered unwise, foolish or ridiculous.

While many philosophical articles have been published relating to this subject, there are few appellate court decisions and none in Pennsylvania to our knowledge. The cases are collected in an annotation in 9 A. L. R. 3d 1391. Considering other factors which have influenced the various courts, the present case does not involve a patient who sought medical attention from a hospital and then attempted to restrict the institution and physicians from rendering proper medical care. The State hospital as Mrs. Yetter's custodian certainly has acted properly in initiating the present proceeding through the patient's brother and cannot be said to have either overridden the patient's wishes or merely allowed her to die for lack of treatment.

---

* Roe v. Wade, 410 U.S. 113, 35 L. Ed. 2d 147 (1973).

The testimony of the caseworker with respect to her conversations with Mrs. Yetter in December 1972, convinces us that at that time her refusal was informed, conscious of the consequences and would not have been superseded by this court. The ordinary person's refusal to accept medical advice based upon fear is commonly known and while the refusal may be irrational and foolish to an outside observer, it cannot be said to be incompetent in order to permit the State to override the decision.

The obvious difficulty in this proceeding is that in recent months Mrs. Yetter's steadfast refusal has been accompanied by delusions which create doubt that her decision is the product of competent, reasoned judgment. However, she has been consistent in expressing the fear that she would die if surgery were performed. The delusions do not appear to us to be her primary reason for rejecting surgery. Are we then to force her to submit to medical treatment because some of her present reasons for refusal are delusional and the result of mental illness? Should we now overrule her original understanding but irrational decision?

There is no indication that Mrs. Yetter's condition is critical or that she is in the waning hours of life, although we recognize the advice of medical experts as to the need for early detection and treatment of cancer symptoms. Upon reflection, balancing the risk involved in our refusal to act in favor of compulsory treatment against giving the greatest possible protection to the individual in furtherance of his own desires, we are unwilling now to overrule Mrs. Yetter's original irrational but competent decision.

Since no additional reasons for the appointment of a guardian of the person are presented, we enter the following

## ORDER OF COURT

And now, June 6, 1973, the petition for the appointment of a guardian of the person for Maida Yetter, an alleged incompetent, is refused.