## 38375. ZANT v. PREVATTE.

WELTNER, Justice.

The following order was entered in the Superior Court of Butts County:

"Walter Zant is Superintendant of the Georgia Diagnostic and Classification Center in Butts County. He brought a petition asking the Court to authorize him to impose medical examinations upon Ted Anthony Prevatte against his will and, if necessary, to force feed Prevatte to prevent his death.

"The Court appointed counsel for Prevatte. Full evidentiary hearing was held on the petition on November 27, 1981.

"Prevatte has not eaten since October 29, 1981.[1] Prison doctors monitored his condition until November 21 when Prevatte refused to

---

[1] Prevatte's dedication to his hunger strike has wavered. We denied an original motion to expedite as it appeared that he had begun to eat again. The record

allow any further examinations. Based on information available, it is the opinion of prison doctors that Prevatte is now in ketosis, a condition where protein is metabolized due to the absence of normal nourishment. Without food, Prevatte will die within three weeks, sooner if no liquid is taken.

"Prevatte is sane and rational. There is no evidence of psychosis or any form of abnormal behavior except to the extent it is not normal to starve oneself.

"The reason for Prevatte's hunger stike is to get the attention of prison officials (this he has done). He feels his life is in danger from other inmates and he has asked for protective custody (which has been granted). While Prevatte fears for his life, there has been no attempt made by anyone to harm him since he has been at the Diagnostic Center (4 weeks). Prevatte cannot give the name of any specific person who is planning to harm him but feels that it will happen if he remains anywhere in the Georgia Prison System. He spent several years at the State Prison at Reidsville and attributes the plan (he calls it a 'racial contract') to kill him to conflicts which developed while he was at Reidsville. Prevatte wants to be transferred to North Carolina where he feels he will be safe.

"The State argues that it has a duty to protect the health of those who are incarcerated in the state penal system; and that there is a compelling state interest to preserve human life. Ergo, the State contends, it should be allowed to prevent Prevatte from starving himself to death.

"Prevatte disagrees and contends that he has the right to control his own body; he says his right to express himself through his hunger strike is of constitutional proportions and that it would be a violation of those rights.

"The State has a duty to prisoners in its custody to keep them safe from harm and to render medical aid when necessary. *Kendrick v. Adamson, sheriff, et al.,* 51 Ga. App. 402 (1935). This duty extends to taking preclusive measures to prevent harm to a prisoner where the officer having custody of him has knowledge of facts from which it might be concluded that the prisoner may harm himself. *Thomas v. Williams,* 105 Ga. App. 321, 327 (1962).

"Does this duty authorize the State to force medical treatment and food on a sane prisoner who does not want such treatment or food?

"The Court rules that it does not. A prisoner does not relinquish

---

indicates that, as of the date of this opinion, Prevatte has not eaten since December 29, 1981. On this basis a second motion to expedite was granted.

his constitutional right to privacy because of his status as a prisoner. The State has no right to monitor this man's physical condition against his will; neither does it have the right to feed him to prevent his death from starvation if that is his wish.

"The State has argued in this proceeding that there is a compelling state interest in preserving any human life. The Court notes that Prevatte was at one time under a death sentence. To take the State's argument to its logical conclusion, were Prevatte still under a death sentence the State would ask the Court to allow it to keep him alive against his will so it could later kill him.[2]

"Such approaches to legal questions point out the perils of the State becoming involved in deciding life or death issues. The State can incarcerate one who has violated the law and, in certain circumstances, even take his life. But it has no right to destroy a person's will by frustrating his attempt to die if necessary to make a point.

"The petition, as amended, is denied." (Footnotes added.)

We affirm the decision of the trial court with the following observations. Prevatte is not mentally incompetent, nor does he have dependents who rely on him for a means of livelihood. The issue of religious freedom is not present. Under these circumstances, we hold that Prevatte, by virtue of his right of privacy, can refuse to allow intrusions on his person, even though calculated to preserve his life. The State has not shown such a compelling interest in preserving Prevatte's life, as would override his right to refuse medical treatment. Other courts have reached the same result under similar circumstances. See Lane v. Candura, 6 Mass. App. Ct. 377 (376 NE2d 1232) (1978); In Re Quackenbush, 156 N. J. Super. 282 (383 A2d 785) (1978); In Re Yetter, 62 Pa. D. & C. 2d 619 (1973). See in general 93 ALR3d 67, anno.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 1, 1982.

*Michael J. Bowers, Attorney General, Virginia H. Jeffries, Assistant Attorney General,* for appellant.
*Hugh M. Glidewell, Jr.,* for appellee.

---

[2] It should be noted that the State's duty of care toward prisoners in its custody cannot vary according to the severity of a prisoner's sentence.