## A00A0987. KETCHUP v. HOWARD.
### (543 SE2d 371)

Johnson, Chief Judge.

The common law doctrine of informed consent provides that physicians and dentists have a duty to inform patients of the known material risks of a proposed treatment or procedure and to inform patients of available treatment alternatives. All of the states except Georgia now recognize the informed consent doctrine.[1] Since this court's 1975 decision in *Young v. Yarn*,[2] Georgia has not recognized any duty on the part of medical professionals to advise their patients of the known material risks of a proposed treatment or procedure nor any duty to advise of the availability of reasonable alternative treatments, thus implicitly rejecting the common law doctrine of informed consent. Because *Young v. Yarn* was wrongly decided, because physicians and dentists have adopted the doctrine of informed consent into their own professional ethical standards, and because of developments in Georgia law since *Young v. Yarn* was decided, we now overrule that decision and all the cases which have followed it. Henceforth the law of this state, like that of the other 49 states, will recognize the common law doctrine of informed consent.

Dr. A. J. Howard examined Joseph Ketchup and told him that he needed a root canal on one of his molars. The procedure was scheduled for a later date. Ketchup returned to Dr. Howard's office on that date for the root canal procedure. Dr. Howard, without ever informing Ketchup of any risks involved with the procedure or of any alternative treatments, then performed the root canal.

Since his root canal, Ketchup has experienced continuous numbness of his lower lip, chin, and gum on the side where the root canal was performed. An endodontist and a neurologist have examined Ketchup and have concluded that the numbness is the result of dental neuropathy, caused by damage to a nerve during the root canal

---

[1] The attached Appendix provides a summary of the law on the issue of informed consent in each of the other 49 states and confirms that Georgia stands alone on this issue.

[2] 136 Ga. App. 737 (222 SE2d 113) (1975).

procedure. The nerve injury apparently is permanent.

Ketchup sued Dr. Howard for dental malpractice, alleging that Dr. Howard (1) negligently injected anesthetic agents while performing the root canal; (2) used improper materials to perform the root canal; and (3) failed to inform Ketchup of the risk of nerve damage resulting from the root canal. Dr. Howard moved for summary judgment, and the trial court granted his motion.

Ketchup appeals, contending the trial court erred in granting summary judgment on that portion of his claim based upon Dr. Howard's failure to inform him of the risks of the procedure. While we conclude that *Young v. Yarn* wrongly declared that there is no duty to inform patients of the known material risks of a proposed course of treatment and must be overruled, we further hold that Georgia's recognition of the informed consent doctrine must apply prospectively. We therefore are constrained to affirm the trial court's summary judgment ruling based on the law as it existed at the time of that ruling.

1. The court in *Young v. Yarn* construed only that part of the Georgia Medical Consent Law, Code § 88-2906, now OCGA § 31-9-6, which provides:

> A consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms of this chapter shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same.

In construing this language, the *Young* court found that a physician's duty to inform the patient of the proposed treatment in general terms does not include a duty to disclose the risks of treatment. Thus, the court held, a patient cannot sustain an action based on a doctor's failure to warn of the risks of treatment.[3] We conclude that the court wrongly decided the case because it erroneously applied well-settled rules of statutory construction, and it did not consider the ramifications of certain constitutionally protected liberty interests.

(a) In order to understand precisely how this court misapplied the rules of statutory construction, it is important to remember that "consent" in the medical sense involves two distinct legal principles, both derived from common law doctrine. The first principle involves

---

[3] Id. at 738-739 (1).

"basic" consent, meaning that consent which avoids a battery, i.e., the consent to a "touching." As Justice Cardozo observed while sitting on the Court of Appeals in New York, "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent[ ] commits an assault, for which he is liable in damages."[4] In other words, a medical "touching" without consent is like any other touching without consent: it constitutes the intentional tort of battery for which an action will lie.

The second principle of consent in the medical context is "informed" consent, which addresses the autonomy of a competent patient to determine what medical treatment he will allow or refuse. As Justice Rehnquist noted in *Cruzan v. Director, Mo. Dept. of Health*,[5] discussed later in this opinion, the United States Supreme Court observed as far back as 1891 that " 'no right is held more sacred, or is more carefully guarded, by the common law' " than an individual's right to possession and control of his own person free from restraint, a notion of bodily integrity embodied in the requirement that informed consent is generally required for medical treatment. Informed consent essentially involves a medical professional fully informing a patient of the risks of and alternatives to the proposed treatment so that the patient's right to decide is not diminished by a lack of relevant information. We must consider these two principles of consent when considering what this court in *Young v. Yarn* held in interpreting Georgia's Medical Consent Law.

Roscoe Pound eloquently described the judge's task in interpreting a statute when he pointed out that the object of interpretation is to discover the rule which the lawmaker intended to establish or the intent with which the lawmaker made the rule. That is to say, to discover the sense which the lawmaker attached to the words so that others could derive from the words the same meaning the lawmaker intended to convey.[6] Ordinarily one accomplishes this, in the judicial sense, by looking at the literal meaning of the words used *and the context* in which the words are employed.

By looking to the plain language of that portion of the 1971 Georgia Medical Consent Law which the *Young v. Yarn* decision addressed,[7] in the context of the whole statute, it is apparent that the legislature intended to address only the "basic" consent which avoids

---

[4] *Schloendorff v. Society of New York Hosp.*, 211 N.Y. 125 (105 NE 92, 93) (App. 1914), overruled, *Bing v. Thunig*, 2 N.Y.2d 656 (143 NE2d 3) (App. 1957).

[5] 497 U. S. 261, 269 (110 SC 2841, 111 LE2d 224) (1990).

[6] See Roscoe Pound, Spurious Interpretation, 7 Colum. L. Rev. 379, 380-384 (1907).

[7] Ga. L. 1971, pp. 438-441.

a battery action, and not "informed" consent.[8] Parts of the statute which were not even mentioned by the court in the *Young v. Yarn* decision[9] provide the context in which the legislation is to be understood. These sections address matters such as who can consent to medical treatment and under what circumstances, what happens when an emergency exists and no authorized person is available to allow the necessary treatment to be performed, and how many persons are required to give the needed consent. In this context, which looks to the entire statute rather than an isolated sentence, it is apparent that in providing that a signed form in which the patient consents to a treatment or procedure which had been explained in general terms is conclusively valid consent, the legislature plainly addressed only basic consent.

The concept of informed consent is not mentioned or addressed by the statute. Certainly the statute does not state expressly or even imply that informed consent is not recognized in Georgia. In the absence of plain language to that effect, the court in *Young v. Yarn* went beyond the legislative intent in concluding that an action based on lack of informed consent will not lie in Georgia.

Furthermore, on the question of whether this court correctly interpreted the statute, we find the analysis of the *Young v. Yarn* opinion in a Mercer Law Review article[10] published less than a year after the decision compelling. The *Young v. Yarn* decision relied heavily on a Black's Law Dictionary definition of "treatment," rather than on the terms "consent" and "disclosure," which are also used in the statute. As this article points out, had the analysis turned upon the definition of either of those terms, it seems likely the court would have recognized the doctrine of informed consent like every other jurisdiction in the country. "One cannot consent to that of which he is not aware; it follows then that the patients cannot be held to have consented to the risks of surgery if they are not informed of these risks."[11]

Moreover, a 1985 bar journal article[12] noted correctly that OCGA § 31-9-6 contains no reference whatsoever to the common law doctrine of informed consent and that "a literal reading of the statute by any informed student of tort law would lead one to conclude that it relates only to basic consent in terms of potential actions for assault

---

[8] See *Early v. Early*, 269 Ga. 415, 416 (499 SE2d 329) (1998); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

[9] Code §§ 88-2901; 88-2902; 88-2903; 88-2904; especially § 88-2905.

[10] Richard Hodge, Consent to Elective Surgery Valid Even If Doctor Didn't Warn of Known Risk, 28 Mercer L. Rev. 377 (1976).

[11] Id. at p. 381.

[12] Gary Smith, Georgia's Medical Consent Law, 21 Ga. St. Bar J., No. 4, pp. 138-139 (1985).

and battery." And while the statute itself provides that it is to be liberally construed,[13] even liberal construction would not require or permit an interpretation which had the effect of eliminating an accepted common law doctrine that the statute did not even mention.

Furthermore, this court has held that this statute *is* indeed in derogation of the common law.[14] Therefore, the ordinary rules of statutory construction would require that the statute be strictly construed.[15] Had that well-settled principle of statutory construction been applied in *Young v. Yarn*, the correct result would have been to limit the breadth of the statute to a codification of the law of basic consent, particularly in the absence of any language indicating a legislative intent to abrogate the "universally recognized"[16] doctrine of informed consent.

(b) Even if the legislature had intended to abolish the doctrine of informed consent by enacting OCGA § 31-9-6, it seems likely that the statute would have been declared unconstitutional had its impact on the constitutionally protected liberty interests discussed below been considered. Perhaps because *Zant v. Prevatte*,[17] *State of Ga. v. McAfee*,[18] and *Cruzan v. Director, Mo. Dept. of Health*[19] had not yet been decided, the question of the statute's constitutionality was neither raised nor addressed in the *Young v. Yarn* decision.

In two of these cases, decided after *Young v. Yarn*, the Supreme Court of Georgia held that all persons have a liberty interest, protected by the Georgia Constitution, to make all decisions regarding their medical care, so long as they are legally competent.[20] This constitutionally protected liberty interest includes the right to refuse all medical treatment, even where the treatment is necessary to save the patient's life.[21]

In *Cruzan*, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the federal constitution protects that identical liberty interest.[22] A competent person has a liberty interest under the Due Process Clause in refusing unwanted medical treatment.[23]

As the Supreme Court noted in. *Cruzan*, the common law doctrine of informed consent is a corollary to this constitutionally pro-

---

[13] OCGA § 31-9-6 (a).
[14] *Butler v. Brown*, 162 Ga. App. 376, 378 (290 SE2d 293) (1982).
[15] *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 299 (1) (528 SE2d 777) (2000).
[16] Smith, 21 Ga. St. Bar J. at p. 140.
[17] 248 Ga. 832 (286 SE2d 715) (1982).
[18] 259 Ga. 579 (385 SE2d 651) (1989).
[19] *Cruzan*, supra.
[20] *McAfee*, supra; *Prevatte*, supra.
[21] See *McAfee*, supra; *Prevatte*, supra.
[22] *Cruzan*, supra.
[23] Id. at 269-278.

tected liberty interest and is firmly reflected in these constitutionally protected rights.[24] Though this court observed in *Young v. Yarn* that "[t]he Georgia courts have never decided whether this doctrine is applicable in this state,"[25] it nevertheless effectively denied Georgians the benefit of the doctrine of informed consent by its decision. It seems clear that, in the absence of the common law doctrine of informed consent, the constitutionally protected liberty interests that individuals enjoy to make all decisions regarding their medical treatment is rendered meaningless.

It has been credibly argued that this court's decision in *Young v. Yarn* effectively and inappropriately placed the real right to make treatment decisions completely with the patient's physician. A physician with that right could, for example, induce or encourage a patient to undergo a risky yet unnecessary surgery without making known either the attendant risks or available alternatives. This would leave the uninformed patient without a remedy, even if the procedure resulted in death or disfigurement, unless the physician negligently performed the surgery.[26] Contrary to the holding in *Young v. Yarn*, the law in Georgia cannot leave such a patient with no recourse. Rather, we hold that a medical professional in Georgia, including a dentist, must inform a patient of the material risks of a proposed treatment or procedure which are or should be known, and they must inform a patient of available alternatives to the proposed procedure or treatment. The holding in *Young v. Yarn* to the contrary is hereby overruled.

2. Courts define and apply the legal duties professionals have to their patients and clients, but do not attempt to define standards of care. The recognized legal duty a medical professional owes to his or her patient is to exercise that degree of skill and care ordinarily employed by members of the same medical profession under the same or substantially similar circumstances.[27] What that required level of skill and care actually is in any given case is a question of the standard of care recognized by the medical profession generally and must be proven through expert testimony.[28]

As interpreted by this court in *Young v. Yarn* and its progeny, OCGA § 31-9-6 effectively substitutes the judgment of this court for that of the medical profession as to the standard of care on the issue of informed consent. To understand this, one needs only look at the

---

[24] Id. at 269.

[25] *Young v. Yarn*, supra at 738.

[26] Hodge, 28 Mercer L. Rev. at p. 381.

[27] *Wilborn v. Blake*, 242 Ga. App. 653, 655 (1) (a) (530 SE2d 778) (2000); *Hailey v. Blalock*, 209 Ga. App. 345, 346 (2) (433 SE2d 337) (1993).

[28] *Harrell v. Lusk*, 263 Ga. 895, 899 (439 SE2d 896) (1994) (Carley, J., concurring specially); *Kapsch v. Stowers*, 209 Ga. App. 767 (434 SE2d 539) (1993).

ethical standards adopted by the American Medical Association and the American Dental Association, which stand in stark contrast to the rule announced in *Young v. Yarn*.

The first AMA Code of Medical Ethics was written in 1847. Section 1 of the 1998-1999 edition, entitled Fundamental Elements of the Patient-Physician Relationship, provides "[t]he patient has the right to receive information from physicians and to discuss the benefits, *risks*, and costs of appropriate treatment alternatives."[29] And Section 8.08 of the AMA Code of Medical Ethics, entitled Informed Consent, provides "[t]he patient's right of self-decision can be effectively exercised only if the patient possesses enough information to enable an intelligent choice." Because the AMA is an organization composed of experts in the field of medicine, its code of ethics and the duties of physicians prescribed therein should be understood to reflect the standard of care of the profession on the issue of informed consent. We are not the first court to recognize that the Code of Medical Ethics sets forth the medical profession's standard on informed consent.[30] The Supreme Court of Indiana, citing the 1992 version of the Code of Medical Ethics, said:

> The 1992 Code of Medical Ethics, as prepared by the Council on Ethical and Judicial Affairs of the American Medical Association, sets forth the medical profession's standard on informed consent. It reads as follows: "The patient's right of self-decision can be effectively exercised only if the patient possesses enough information to enable an intelligent choice. The patient should make his own determination on treatment. The physician's obligation is to present the medical facts accurately to the patient or to the individual responsible for his care and to make recommendations for management in accordance with good medical practice. The physician has an ethical obligation to help the patient make choices from among the therapeutic alternatives consistent with good medical practice. Informed consent is a basic social policy for which exceptions are permitted (1) where the patient is unconscious or otherwise incapable of consenting and harm from failure to treat is imminent; or (2) when risk-disclosure poses such a serious psychological threat of detriment to the patient as to be medically contraindicated. Social policy does not accept the paternalistic view that the physician may remain silent because divulgence might prompt the patient to forego needed therapy.

---

[29] (Emphasis supplied.)
[30] See *Culbertson v. Mernitz*, 602 NE2d 98 (Ind. 1992).

Rational, informed patients should not be expected to act uniformly, even under similar circumstances, in agreeing to or refusing treatment."[31]

Similar language in the ADA Code of Ethics also reflects the standard of care for the dental profession. Part III, Section 1 of the American Dental Association Code of Ethics, entitled Principle: Patient Autonomy, provides "[t]he dentist has a duty to respect the patient's rights to self-determination and confidentiality," and Section 1A provides "[t]he dentist should inform the patient of the proposed treatment, and any reasonable alternatives, in a manner that allows the patient to become involved in treatment decisions."

These AMA and ADA ethical standards embrace the doctrine of informed consent, as does the law in all 49 of Georgia's sister states. Yet in decisions such as *Hyles v. Cockrill*[32] and *Padgett v. Ferrier*,[33] which apply the holding in *Young v. Yarn*, this court has held inadmissible expert testimony that failure of a medical professional to inform a patient of the risks of a proposed treatment and/or reasonable available alternatives is a breach of the standard of care. That this court, in order to uphold *Young v. Yarn*, was required to rule that such expert testimony on the critical issue of standard of care is irrelevant and inadmissible is strong evidence that the original decision was wrong, especially in view of the ethical standards of the medical and dental professions discussed above. These decisions ignored the well-settled principle that the standard of care is determined by the medical profession, not by the courts. These decisions are also overruled.

3. Subsequent to the *Young v. Yarn* decision, the legislature enacted OCGA § 31-9-6.1, which requires medical professionals to provide information to their patients concerning the risks of some, but not all, medical procedures. That Code section is limited to surgical procedures performed under general anesthesia, spinal anesthesia, or major regional anesthesia, diagnostic amniocentesis, and diagnostic procedures which involve intravenous or intraductal injection of contrast material. Because the legislature is presumed to act with full knowledge of the existing state of the law, the enactment of OCGA § 31-9-6.1, a limited form of informed consent, can be seen as expanding the applicability of the doctrine of informed consent in Georgia from its status immediately following the *Young v. Yarn* decision. Because we have concluded that the *Young v. Yarn* case was wrongly decided, OCGA § 31-9-6.1 cannot be said to have any limit-

---

[31] Id. at 103.
[32] 169 Ga. App. 132 (1) (312 SE2d 124) (1983).
[33] 172 Ga. App. 335 (323 SE2d 166) (1984).

ing effect on the recognition of the common law doctrine of informed consent which we announce in this case.

In fact, OCGA § 31-9-6.1 is helpful in determining the standard by which to measure the duty on the part of a physician or dentist to inform his or her patient of risks inherent in proposed medical treatment. There are two major standards being applied in Georgia's sister states. One is the professional medical standard, sometimes referred to as the traditional standard. The other is the lay standard, sometimes referred to as either the materiality of risk or prudent patient standard.[34]

Under the professional standard, the physician is required to disclose those risks which a reasonable and prudent medical practitioner would disclose under the same or similar circumstances. In most cases, the questions of whether and to what extent a physician or dentist has a duty to disclose a particular risk must be determined through expert testimony which establishes the standard of care on the issue and the physician's or dentist's departure from that standard.[35]

In contrast, under the lay standard the physician's disclosure duty is to be measured by the patient's need for information rather than by the standards of the medical profession. While expert testimony would be required to establish that the risk which allegedly caused the injury is one which is known or should be known, the lay standard would not ordinarily require expert testimony regarding medical standards to establish the physician's duty to disclose; rather, it is for the jury to determine whether a reasonable person in the patient's position would have considered the risk significant in making the decision to have or reject the proposed treatment.[36]

As the South Carolina Court of Appeals pointed out in *Hook v. Rothstein*,[37] the greater number of states in this country follow the professional standard, though almost as many states adhere to the lay standard.[38] In Georgia, the legislature has spoken to the standard which we will apply here, the patient standard.

Though OCGA § 31-9-6.1 is a limited codification of the common law doctrine of informed consent as previously discussed, it expresses

---

[34] See 61 AmJur2d, Physicians, Surgeons & Other Healers, §§ 188-189 (1981); see also *Woolley v. Henderson*, 418 A2d 1123, 1128-1129 (Me. 1980).

[35] See, e.g., *Hook v. Rothstein*, 281 S.C. 541 (316 SE2d 690) (App. 1984); *Woolley*, supra; *Bly v. Rhoads*, 216 Va. 645 (222 SE2d 783, 787) (1976), superseded by statute as stated in *Black v. Bladergroen*, 258 Va. 438 (521 SE2d 168) (1999).

[36] See, e.g., *Miller v. Kennedy*, 11 Wn. App. 272 (522 P2d 852, 863) (1974); *Wilkinson v. Vesey*, 110 R.I. 606 (295 A2d 676, 688) (1972).

[37] Supra.

[38] See 88 ALR3d 1008, 1012, 1034 (1978).

a clear adoption of the patient standard,[39] which requires disclosure of the material risks generally recognized and accepted by reasonably prudent physicians which, if disclosed to a reasonably prudent person in the patient's position, could reasonably be expected to cause that person to decline the proposed treatment or procedure because of the risk of injury that could result. Thus, as to the treatments and procedures covered by OCGA § 31-9-6.1, the statute's language makes it clear that expert testimony would be required to establish that the particular risk either was known or should be known, but expert testimony would not be required to establish that the patient's decision to either have or reject the proposed treatment because of the risk would have been affected. The jury would, as in general tort cases, be asked to determine whether an ordinary, reasonable, and prudent person in the patient's position would have rejected the proposed treatment or procedure using lay standards. We believe this to be the better rule, and, in any event, it is obviously the one the legislature favors. Therefore, we will apply it in informed consent cases generally.

4. Courts rightly have a preference for following precedent and adhering to the doctrine of stare decisis, but obviously must be willing to overrule prior decisions when necessary. As Chief Justice Benham noted in his dissent in *Etkind v. Suarez*,[40]

> [t]he rule of stare decisis is a wholesome one, but should not be used to sanctify and perpetuate error. We deprecate and distrust rash innovation as much as the most conservative magistrates ought, but it has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes.[41]

The overruling of previous decisions raises many theoretical issues, one of which is the application of the new rule to other cases. Having decided to overrule the *Young v. Yarn* decision and its progeny, we must now decide the breadth of application of the new decision. There are four possibilities: full retroactive application; partial retroactive application; partial prospective application; and pure prospective application. The choice of which to employ turns upon whether the defendant, and those in the same position, justifiably

---

[39] OCGA § 31-9-6.1 (a) (3).
[40] 271 Ga. 352 (519 SE2d 210) (1999).
[41] (Citation and punctuation omitted.) Id. at 360.

relied upon the existing rule of law. The issue of justified reliance turns upon the question of whether any increased exposure to liability resulting from the change in the law harms a defendant who could have avoided the liability had he or she known about the rule.

> The overruling of the precedent may bring about a much needed change in the law, but the attendant retroactive feature produces evils which often, in immediate effect, outweigh the advantages attained. Uncertainty in the law results [from full retroactive application].[42]

Prospective application provides a solution to these problems.[43] Because medical and dental professionals in Georgia have operated under the principle announced in *Young v. Yarn* and its progeny for a quarter of a century, we conclude that they are entitled to rely upon it until the publication of this opinion. In other words, justice, under the circumstances of this decision, requires us to adopt a purely prospective application of the principles announced herein.

Consequently, the prospective application of this ruling will not affect the instant case. Even though it is undisputed that Dr. Howard did not inform Ketchup of the risk of dental neuropathy prior to performing the root canal procedure, because Georgia law did not then recognize any such duty upon dentists to warn patients of such risks or of available alternatives,[44] Dr. Howard cannot be held liable for his failure to warn.[45] The trial court therefore did not err in granting Dr. Howard summary judgment on this issue.

5. Contrary to the position taken by the special concurrence, the Supreme Court of Georgia has never held that the principle announced in *Young v. Yarn* was correct.

In *Robinson v. Parrish*,[46] one of the two Supreme Court cases the special concurrence cites as holding that OCGA § 31-9-6 establishes that there is no duty in Georgia to disclose the risks of medical treatment, the Supreme Court was addressing a certified question from the federal appeals court regarding the Georgia Voluntary Sterilization Act, OCGA § 31-20-2. The only question addressed by the Supreme Court was whether the Voluntary Sterilization Act requires a physician to disclose possible risks associated with a sterilization

---

[42] (Citation and punctuation omitted.) Thomas Dufour, The Proper Application of Judicial Decisions Overruling Established Tort Doctrines, 65 B.U. L. Rev. 315, 320, n. 36 (1985).

[43] See id.; Kocourek & Koven, Renovation of the Common Law Through Stare Decisis, 29 Ill. L. Rev. 971, 972 (1935).

[44] *Young v. Yarn*, supra.

[45] *Renfroe v. Arrington*, 238 Ga. App. 470, 473, n. 1 (519 SE2d 3) (1999); *Kelly v. Reid*, 186 Ga. App. 89, 90 (2) (366 SE2d 315) (1988); *Young v. Yarn*, supra.

[46] 251 Ga. 496, 497 (306 SE2d 404) (1983).

procedure before the patient could validly consent to the procedure. Although the Court referred to OCGA § 31-9-6 and *Young v. Yarn* in the opinion, it did not rely on either in reaching its decision. In fact, the Court stated that the Georgia Medical Consent Law (OCGA § 31-9-6), which *Young v. Yarn* interpreted, did not apply because it specifically excluded sterilization procedures. The Court noted that sterilization procedures were to be governed by the terms of the Voluntary Sterilization Act, then went on to interpret the meaning of *that Act*, not the statute at issue in this case.

In *Albany Urology Clinic v. Cleveland*,[47] the issue was not whether, as the special concurrence says, a failure to disclose the risks of a medical procedure would support a claim for medical negligence. Instead, the issue was whether a physician had a duty to disclose to his patients factors of his life, namely his drug use, which might adversely affect the physician's performance.[48] Even though the Court cited *Young v. Yarn*, it did not decide the issue of whether a physician has a common law duty to disclose the risks associated with a particular medical treatment or procedure. In fact, *Albany Urology* dealt specifically with the applicability of OCGA § 31-9-6.1, requiring informed consent in cases involving surgery performed while a patient is under general anesthesia. While reasonable minds may differ as to whether the language in *Albany Urology* presents an obstacle to this court correcting its own error in *Young v. Yarn* and its progeny, there is little room for disagreement that the mention of the common law principle of informed consent in both Supreme Court cases was dicta. Since the Supreme Court's use or mention of our cases was merely dicta, we believe this court is within its authority to overrule the cases we decided which changed the common law principle of informed consent in this state.

6. Finally, in his brief, Ketchup argues that Dr. Howard failed to inform him of the general nature of the root canal procedure and, therefore, violated OCGA § 31-9-6, which sets out the requirements for establishing valid consent to a procedure. However, Ketchup's complaint does not allege that Dr. Howard failed to inform him of the general nature of a root canal procedure or that Dr. Howard did not have Ketchup's consent to perform the root canal procedure.[49] And Ketchup never amended his complaint to include an allegation of lack of basic consent. The evidence is undisputed that Ketchup was told during one visit that he needed the procedure and that he scheduled an appointment to have the procedure done at a later time, then returned to Dr. Howard's office and submitted to the procedure. This

---

[47] Supra at 298.
[48] Id.
[49] Compare *Spikes v. Heath*, 175 Ga. App. 187, 188-190 (2) (332 SE2d 889) (1985).

conclusively establishes basic consent, which, as we have held herein, is all OCGA § 31-9-6 addresses.

Rather, Ketchup sued Dr. Howard for dental malpractice, claiming that Dr. Howard breached the standard of care in performing the root canal and in failing to advise him of potential complications of the root canal. Insofar as the brief and enumeration of error attempt to broaden the allegations in Ketchup's complaint to include an allegation that Dr. Howard failed to inform Ketchup of the general nature of the root canal procedure and therefore did not have Ketchup's consent to perform the root canal procedure, the attempt is impermissible.[50] Since this claim was neither alleged in Ketchup's complaint, supported by any evidence, nor raised in the trial court, we will not consider it here.[51]

*Judgment affirmed. Pope, P. J., Smith, P. J., Eldridge, Barnes, Ellington, Phipps and Mikell, JJ., concur. Andrews, P. J., Blackburn, P. J., Ruffin and Miller, JJ., concur specially.*

APPENDIX.

1. *Alabama*: A physician must inform his patient of all material risks associated with a medical procedure. *Otwell v. Bryant*, 497 S2d 111, 117-118 (Ala. 1986); *Fain v. Smith*, 479 S2d 1150, 1152 (Ala. 1985). Expert testimony is required to establish whether the physician disclosed all risks which a medical doctor practicing in the same general line of practice in the nation would have disclosed. Ala. Code § 6-5-484; *Wells v. Storey*, 1999 Ala. LEXIS 361, Civil Action No. CV-96-391 (November 24, 1999); *Hawkins v. Carroll*, 676 S2d 338 (Ala. App. 1996); *Baker v. Chastain*, 389 S2d 932, 935 (Ala. 1980). The standard used is whether a reasonable person in the patient's position would have decided to undergo the procedure if adequately informed of all significant perils. *Otwell*, supra; *Fain*, supra at 1154-1155.

2. *Alaska*: Alaska Stat. § 09.55.556 (a) provides:

> A health care provider is liable for failure to obtain informed consent of a patient if the claimant establishes by a preponderance of the evidence that the provider has failed to inform the patient of the common risks and reasonable alternatives to the proposed treatment or procedure.

A physician must disclose the risks and benefits which a reasonable patient would need to know in order to make an intelligent and

---

[50] See generally *Lowe v. State*, 267 Ga. 754, n. 1 (482 SE2d 344) (1997).

[51] See *Hightower v. Kendall Co.*, 225 Ga. App. 71, 72 (3) (483 SE2d 294) (1997); *English v. Liberty Mtg. Corp.*, 205 Ga. App. 141, 142-143 (1) (421 SE2d 286) (1992).

informed decision. *Korman v. Mallin*, 858 P2d 1145, 1149 (Alaska 1993).

3. *Arizona*: Whether a physician is under a duty to warn a patient of the possibility of a specific adverse result of a proposed treatment depends upon the circumstances of the particular case and the general practices of the physician's profession in the state of Arizona, and the custom of the medical profession to warn must be established by expert medical testimony. *Potter v. Wisner*, 170 Ariz. 331 (823 P2d 1339) (App. 1991); *Riedisser v. Nelson*, 111 Ariz. 542 (534 P2d 1052, 1054-1055) (1975); see also ARS § 12-563. The patient must show that he would not have gone through with the procedure if the risk were known. *Hales v. Pittman*, 118 Ariz. 305 (576 P2d 493, 499-500) (1978); *Riedisser*, supra at 1055.

4. *Arkansas*: Ark. Stat. § 16-114-206 (b) (1) (1987) states that information regarding risks and alternatives must be given except in emergencies. The statute applies to both physicians and dentists. The standard used to measure nondisclosure is whether a reasonable person in the patient's position would have withheld consent to the treatment or procedure had the material risks been disclosed. *Aronson v. Harriman*, 321 Ark. 359 (901 SW2d 832, 840) (1995).

5. *California*: A physician must disclose available choices with respect to proposed therapy and the dangers inherently and potentially involved in each. *Cobbs v. Grant*, 8 Cal.3d 229 (502 P2d 1, 10) (1972). The test for determining whether a potential peril must be divulged is its materiality to the patient's decision, not the custom of physicians practicing in the community. *Arato v. Avedon*, 5 Cal.4th 1172 (858 P2d 598) (1992); *Cobbs*, supra at 10-11. Material information is that which the physician knows or should know would be regarded as significant by a reasonable person in the patient's position when deciding whether to accept or reject the recommended procedure. *Arato*, supra; *Truman v. Thomas*, 27 Cal.3d 285 (611 P2d 902, 905) (1980). In determining causation, the jury must decide what a prudent person in the patient's position would have decided if adequately informed of all significant perils. *Cobbs*, supra at 11-12.

6. *Colorado*: Colorado requires that substantial risks of a particular procedure or treatment must be disclosed to the patient. A substantial risk is one that would be medically significant to the patient's decision and is known, or ought to be known, by the physician. The substantiality of a particular risk must be determined on the basis of expert testimony demonstrating the extent of information given by reasonably careful physicians practicing the same specialty in the same or similar community. *Gorab v. Zook*, 943 P2d 423, 427 (Colo. 1997); *Mallett v. Pirkey*, 466 P2d 466, 472-473 (Colo. 1970).

7. *Connecticut*: A physician must disclose, in language a lay person can understand, information that he has or should have concerning

the nature of the risks of proposed treatment and all viable alternatives with any dangers involved therein which are material to an intelligent choice by a reasonable person such as the patient. A risk is material when a reasonable person, in what the physician knows or should know about the patient's position to be, would attach significance to the risk in deciding whether to forgo the proposed treatment. *Logan v. Greenwich Hosp. Assn.*, 191 Conn. 282 (465 A2d 294, 299-301) (1983). Once the existence of the duty to inform has been established, the degree or extent of disclosure necessary to satisfy the duty is measured by what a reasonable person would need to know to make any informed decision, not the standard in the medical community. *Hammer v. Mt. Sinai Hosp.*, 25 Conn. App. 702 (596 A2d 1318, 1325) (1991); *Logan*, supra.

8. *Delaware*: While 18 Del. Code § 6852 contains a provision dealing specifically with the subject of informed consent by health care providers, this chapter excludes dentists. However, informed consent claims in Delaware involving a dentist are governed by common law. *Molnar v. Rafetto*, 1990 Del. Super. LEXIS 394, Civil Action No. 87C-AP-109 (October 31, 1990). A physician must disclose specific known risks, subject to the exception of the existence of any emergency and further subject to the exception that there is no duty to disclose when disclosure would be likely to bring about harmful results. The duty to disclose depends on the factual circumstances and the general practice followed by the medical profession in the locality; the custom of the medical profession to warn must be established by expert medical testimony. *Coleman v. Garrison*, 327 A2d 757 (Del. 1974), overruled in part, *Garrison v. Med. Center of Del.*, 571 A2d 786 (Del. 1989).

9. *Florida*: Fla. Statute § 766.103 (3) (a) (2) notes that reasonable care on the part of a physician in obtaining the informed consent for treatment consists of providing the patient information sufficient to give a reasonable person a general understanding of the proposed procedure, the medically acceptable alternative procedures, and the substantial risks and hazards inherent in the proposed procedure which are recognized by other physicians in the same or similar community who perform similar procedures. A physician is not under a duty to elucidate upon all the possible risks, but only those of a serious nature. See also Fla. Statute § 381.026. Expert testimony is required to establish whether a reasonable physician in the community would make the pertinent disclosures under the same or similar circumstances. *Ritz v. Fla. Patient's Compensation Fund*, 436 S2d 987, 990-991 (Fla. App. 1983); *Thomas v. Berrios*, 348 S2d 905, 907 (Fla. App. 1977).

10. *Hawaii*: HRS § 671-3 creates a statutory medical tort for the rendering of professional services without informed consent. However, this statute does not apply to dentists. Therefore, a breach of

informed consent claim against a dentist is based on common law. Physicians have a duty to fully disclose to a patient material risks and alternatives to a proposed treatment. *Ditto v. McCurdy*, 86 Haw. 84 (947 P2d 952, 958) (1997). After determining through expert testimony whether the risk was material, the focus is on what a reasonable person, with all the characteristics of the patient (including his idiosyncracies and religious beliefs), would need to hear to allow him to make an informed and intelligent decision regarding proposed medical treatment. Thus, a patient is not required to produce any expert medical testimony regarding what other reasonable dentists would have disclosed under the same or similar circumstances. *O'Neal v. Hammer*, 87 Haw. 183 (953 P2d 561, 565) (1998) (dental case); *Carr v. Strode*, 79 Haw. 475 (904 P2d 489, 498-500) (1995); *Bernard v. Char*, 79 Haw. 362 (903 P2d 667, 673-675) (1995) (dental case).

11. *Idaho*: The issue of informed consent is governed by Idaho Code § 39-4304: Consent shall be valid if the person giving it is sufficiently aware of pertinent facts respecting the need for, the nature of, and the significant risks ordinarily attendant upon such a patient receiving care, as to permit the giving or withholding of such consent to be a reasonably informed decision. Disclosure must be made which would ordinarily be made and given under the same or similar circumstances by a like physician of good standing practicing in the same community. The patient must show that a reasonable person would not have consented to the proposed procedure had a full and adequate disclosure been made at the time consent was originally given. *Sherwood v. Carter*, 119 Idaho 246 (805 P2d 452, 457-461, 465) (1991).

12. *Illinois*: A physician has a duty to inform patients of the foreseeable risks and results of a given procedure and the reasonable alternatives to that procedure that a reasonable physician in the same or similar circumstances would have disclosed. *Weekly v. Solomon*, 156 Ill. App.3d 1011 (510 NE2d 152, 156) (1987). Expert testimony is required to establish the reasonableness standard; this may be done by showing the standard in the physician's community, a similar community, or a national or international standard. See id. at 155-156; *Sheahan v. Dexter*, 136 Ill. App.3d 241 (483 NE2d 402, 407) (1985); *Guebard v. Jabaay*, 117 Ill. App.3d 1 (452 NE2d 751, 757) (1983). Causation is determined by looking at what a prudent person in the patient's position would have decided if adequately informed of all significant perils. *Lowney v. Arciom*, 232 Ill. App.3d 715 (597 NE2d 817, 819) (1992); *Guebard*, supra at 757-758.

13. *Indiana*: A physician must disclose material risks associated with a medical procedure. Expert testimony is necessary to establish whether a physician has complied with the standard of a reasonably

prudent physician. *Culbertson v. Mernitz*, 602 NE2d 98, 100 (Ind. 1992).

14. *Iowa*: A physician recommending a particular procedure generally has the duty to disclose to the patient all material risks involved with the procedure. The physician's duty to disclose is measured by the patient's need to have access to all information material to making a truly informed decision regarding the proposed medical procedure. The plaintiff must show that disclosure of the risk would have led a reasonable patient in the plaintiff's position to reject the medical procedure or choose a different course of treatment. *Pauscher v. Iowa Methodist Med. Center*, 408 NW2d 355, 358-360 (Iowa 1987).

15. *Kansas*: In the absence of an emergency, a physician has a duty to disclose the risks and dangers incident to a proposed medical procedure which a reasonable medical practitioner would make under the same or similar circumstances. Causation is determined by looking at what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance. *Funke v. Fieldman*, 212 Kan. 524 (512 P2d 539) (1973).

16. *Kentucky*: A physician is required to disclose risks which he knows or should have known at the time he recommended the treatment to the patient. *Holton v. Pfingst*, 534 SW2d 786 (Ky. App. 1975).

17. *Louisiana*: Physician must disclose any material consequences which would influence the treatment decision of a reasonable person. *Hondroulis v. Schumacher*, 553 S2d 398, 403-404 (La. 1997).

18. *Maine*: The duty to inform is measured by reference to the reasonable medical practitioner in the same field. *Downer v. Veilleux*, 322 A2d 82, 89-91 (Me. 1974); *Woolley v. Henderson*, 418 A2d 1123, 1128 (Me. 1980).

19. *Maryland*: The proper test for measuring the physician's duty is whether such information would be material to the reasonable patient's decision. *Sard v. Hardy*, 281 Md. 432 (379 A2d 1014, 1020) (1977).

20. *Massachusetts*: Physician must disclose material risks as measured by the patient's need for information in making a decision. *Harnish v. Children's Hosp. Med. Center*, 387 Mass. 152 (439 NE2d 240, 243) (1982).

21. *Michigan*: A claim of uninformed consent may or may not require expert testimony, depending on facts of case. If the need for the information is within the general knowledge of laymen, then expert testimony is not needed; but if laymen would not necessarily know what information should be given in a particular case, then expert testimony is needed. *Paul v. Lee*, 455 Mich. 204 (568 NW2d 510) (1997).

22. *Minnesota*: Patient must show the risks and alternative treatments that a physician is required to know and that a reasonable physician should have known that a patient in similar circumstances

would likely attach significance to the information in deciding whether to accept the treatment. *Kinikin v. Heupel*, 305 NW2d 589 (Minn. 1981).

23. *Mississippi*: Physician must disclose known risks material to a prudent patient in determining whether to undergo the proposed treatment. Expert testimony is not necessarily required if the information is a matter within knowledge of laymen. *Hudson v. Parvin*, 582 S2d 403, 410 (Miss. 1991).

24. *Missouri*: To prove nondisclosure, the patient must produce expert testimony to show what disclosures a reasonable physician would have made under similar circumstances. *Wilkerson v. Mid-America Cardiology*, 908 SW2d 691, 696 (Mo. App. 1995).

25. *Montana*: Physician has duty to make disclosures that a reasonable physician under similar circumstances would make so a patient can make an intelligent decision about whether to submit to the treatment. *Collins v. Itoh*, 160 Mont. 461 (503 P2d 36) (1972).

26. *Nebraska*: The extent of the doctor's duty is measured by the standard of the reasonable medical practitioner under the same or similar circumstances. *Robinson v. Bleicher*, 251 Neb. 752 (559 NW2d 473) (1997).

27. *Nevada*: Nevada employs the "professional" standard, under which a doctor has a duty to disclose information that a reasonable practitioner in the same field of practice would disclose. *Smith v. Cotter*, 107 Nev. 267 (810 P2d 1204) (1991).

28. *New Hampshire*: A doctor has a duty to inform his patient of reasonable risks involved in a procedure. *Folger v. Corbett*, 118 N.H. 737 (394 A2d 63) (1978). The standard is defined by reference to the standards and practices of the medical profession, the average medical practitioner, and other relevant circumstances. *Smith v. Cote*, 128 N.H. 231, 240 (513 A2d 341) (1986).

29. *New Jersey*: A physician should describe the material risks inherent in a procedure or treatment. The test for measuring the materiality of a risk is whether a reasonable patient would consider the risk material. *Matthies v. Mastromonaco*, 160 N.J. 26, 37 (733 A2d 456) (1999).

30. *New Mexico*: New Mexico has adopted an "objective" standard; the extent of disclosure required is based on the knowledge or skill of an ordinary patient or physician. *Gerety v. Demers*, 92 N.M. 396, 410-411 (589 P2d 180) (1978).

31. *New York*: The doctor has a duty to disclose to the patient the reasonably foreseeable risks and benefits involved as a reasonable practitioner under similar circumstances would disclose. N.Y. CLS Pub. Health § 2805 (d) (1999).

32. *North Carolina*: A doctor must disclose risks in accordance with the standards of practice among members of the same profession

with similar training and experience and situated in the same or similar communities. N.C. Gen. Stat. § 90-21.13 (1999).

33. *North Dakota*: An integral part of the physician's overall obligation to a patient is the duty to disclose the material risks of which the physician knows or should know. *Kershaw v. Reichert*, 445 NW2d 16 (N.D. 1989); *Winkjer v. Herr*, 277 NW2d 579, 588 (N.D. 1979).

34. *Ohio*: Patients must be told of risks which a reasonably prudent physician would disclose. *Turner v. Children's Hosp.*, 76 Ohio App.3d 541, 554-555 (602 NE2d 423) (1991).

35. *Oklahoma*: A physician has a duty to fully disclose all material risks, based on what the patient needs to know in order to make a decision. *Smith v. Reisig*, 1984 OK 56 (686 P2d 285) (1984); *Scott v. Bradford*, 1979 OK 165 (606 P2d 554, 557-558) (1979).

36. *Oregon*: A physician must explain any risks, and if the patient requests further information, the physician must disclose in substantial detail material risks, unless it would be detrimental to the patient. ORS § 677.097. The test as to the further explanation is based on the standard of practice of the reasonable medical practitioner. *Tiedemann v. Radiation Therapy Consultants*, 299 Ore. 238 (701 P2d 440) (1985).

37. *Pennsylvania*: A physician must advise a patient of material risks which a reasonable person would have considered significant in deciding whether to have the operation. *Sinclair v. Block*, 534 Pa. 563, 568 (633 A2d 1137) (1993).

38. *Rhode Island*: Physician must disclose risks that would be material to a reasonable person in the patient's position. Under this reasonable patient approach, a patient claiming uninformed consent need not support his claim with an expert opinion. *Wilkinson v. Vesey*, 110 R.I. 606 (295 A2d 676) (1972).

39. *South Carolina*: Physician must disclose risks that a reasonable medical practitioner would disclose under the same circumstances. Under this reasonable physician approach, a patient must support a claim of uninformed consent with expert testimony. *Hook v. Rothstein*, 281 S.C. 541 (316 SE2d 690) (1984).

40. *South Dakota*: Physician must disclose risks that would be material to a reasonable person in the patient's position. Although expert testimony is not required to establish the scope of the physician's duty to disclose information to the patient, expert testimony may be necessary to prove other matters such as risks of treatment and alternative treatments. *Wheeldon v. Madison*, 374 NW2d 367 (1985).

41. *Tennessee*: Physician must disclose risks that a reasonable medical practitioner under similar circumstances would disclose. Under this reasonable physician approach, a patient must support a claim of uninformed consent with expert testimony. *Shadrick v. Coker*, 963 SW2d 726 (Tenn. 1998); *Housh v. Morris*, 818 SW2d 39, 41 (Tenn. App. 1991).

42. *Texas*: Physician must disclose risks that a reasonable medical practitioner under similar circumstances would disclose. Under this reasonable physician approach, a patient must support a claim of uninformed consent with expert testimony. *Wilson v. Scott*, 412 SW2d 299 (Texas 1967).

43. *Utah*: Utah Code Ann. § 78-14-5 (1987); *Ramon v. Farr*, 101 Utah Adv. Rep. 48 (770 P2d 131) (1989).

44. *Vermont*: Physician must disclose risks that would be material to a reasonable person in the patient's position. Expert testimony is not needed to establish the patient's informational needs, but may be required to prove such technical matters as risks. *Small v. Gifford Mem. Hosp.*, 133 Vt. 552 (349 A2d 703) (1975).

45. *Virginia*: Physician must disclose risks that a reasonable medical practitioner under similar circumstances would disclose. A patient must introduce expert testimony to prove what information should be disclosed by a physician. *Hunter v. Burroughs*, 123 Va. 113-114; (96 SE 360, 366-367) (1918); *Bly v. Rhoads*, 216 Va. 645 (222 SE2d 783) (1976).

46. *Washington*: Elements patient must prove for an uninformed consent claim are that physician failed to inform of material facts regarding treatment, patient consented to treatment without being fully informed of such material facts, reasonably prudent patient would not have consented to the treatment if informed of such material facts, and treatment proximately caused injury. Expert testimony must be used to establish nature of proposed treatment, anticipated results of proposed treatment, recognized alternative treatment, and recognized serious risks of proposed treatment. *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460 (656 P2d 483) (1983). *Backlund v. Univ. of Washington*, 137 Wn.2d 651 (975 P2d 950) (1999).

47. *West Virginia*: Physician must disclose risks that would be material to a reasonable person in the patient's position. Although expert testimony is not required to prove patient's informational needs, expert testimony ordinarily is needed to prove such things as the risks of the proposed treatment and alternative treatments. *Cross v. Trapp*, 170 W. Va. 459 (294 SE2d 446) (1982).

48. *Wisconsin*: Physician must disclose facts necessary to enable a reasonable person under circumstances similar to those facing the patient to intelligently exercise his right to consent to or reject the proposed treatment. *Scaria v. St. Paul Fire &c. Ins. Co.*, 68 Wis.2d 1 (227 NW2d 647) (1975).

49. *Wyoming*: Physicians and dentists must disclose risks that a reasonable medical practitioner in similar circumstances would disclose. Under this reasonable physician approach, a patient must support a claim of uninformed consent with expert testimony. *Roybal v. Bell*,

778 P2d 108 (Wyo. 1989); *Havens v. Hoffman*, 902 P2d 219 (Wyo. 1995).

ANDREWS, Presiding Judge, concurring specially.

I concur in the judgment rendered by the majority affirming the trial court's grant of summary judgment in favor of Dr. Howard on Ketchup's claim that Dr. Howard committed malpractice by failing to inform him of the risks of the root canal procedure. The judgment in favor of Dr. Howard was mandated because the Georgia informed consent law set forth in OCGA § 31-9-6.1 did not require the disclosure of those risks.

I write separately to state that the majority opinion's attempt by judicial fiat to prospectively expand the limitations of the Georgia informed consent law adopted by the General Assembly in OCGA § 31-9-6.1 usurps the exercise of legislative power to define the doctrine of informed consent in Georgia and is a matter beyond the authority of this Court. The majority does not contend that the informed consent law set forth in OCGA § 31-9-6.1 required Dr. Howard to inform Ketchup of the risks involved with the root canal procedure. To the contrary, the statute clearly does not apply the doctrine of informed consent to this procedure. Instead, the majority proclaims for prospective application only that: "Henceforth[,] the law of this state, like that of the other 49 states, will recognize the common law doctrine of informed consent." Whether Georgia should recognize the doctrine of informed consent in a form similar to that adopted by other states is not the issue. The issue is whether the authority to do so rests with the courts or the General Assembly.

Prior to the 1988 enactment of the informed consent law in OCGA § 31-9-6.1, both this Court and the Supreme Court of Georgia held that the Georgia Medical Consent Law at OCGA § 31-9-6 established that there was no duty in Georgia to disclose the risks of medical treatment. *Simpson v. Dickson*, 167 Ga. App. 344, 347-348 (306 SE2d 404) (1983); *Robinson v. Parrish*, 251 Ga. 496, 497 (306 SE2d 922) (1983). Accordingly, under pre-1988 common law precedent, a failure to disclose such risks would not support a claim for professional negligence. *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 298 (528 SE2d 777) (2000), citing *Young v. Yarn*, 136 Ga. App. 737 (222 SE2d 113) (1975); *Hyles v. Cockrill*, 169 Ga. App. 132, 133 (312 SE2d 124) (1983); *Padgett v. Ferrier*, 172 Ga. App. 335 (323 SE2d 166) (1984). Both this Court and the Supreme Court of Georgia have also concluded that, since this common law rule is based on longstanding judicial interpretations of the Medical Consent Law which have become an integral part of that statute, any subsequent change in this rule could be accomplished only by an act of the General Assembly. *Simpson*, 167 Ga. App. at 347-348; *Spikes v. Heath*, 175 Ga. App.

187, 188, n. 2 (332 SE2d 889) (1985); *Albany Urology*, 272 Ga. at 298. As the Supreme Court noted in *Albany Urology*, that change occurred in 1988 when the General Assembly adopted a limited application of the informed consent doctrine by enacting OCGA § 31-9-6.1. Id. at 298.

Addressing this statutory change in *Albany Urology*, the Supreme Court held that:

> Section 31-9-6.1 sets forth six specified categories of information that must be disclosed by medical care providers to their patients before they undergo certain specified surgical or diagnostic procedures. The Georgia informed consent statute does not impose a general requirement of disclosure upon physicians; rather, it requires physicians to disclose only those factors listed in OCGA § 31-9-6.1 (a). . . . Because OCGA § 31-9-6.1 is in derogation of the common law rule against requiring physicians to disclose medical risks to their patients, it must be strictly construed and cannot be extended beyond its plain and explicit terms. *Thus, in situations not covered by the statute's language, the common law rule must still govern, as courts are without authority to impose disclosure requirements upon physicians in addition to those requirements already set forth by the General Assembly.*

(Footnotes omitted; emphasis supplied.) *Albany Urology*, 272 Ga. at 298-299.

Since nothing in the Georgia informed consent statute at OCGA § 31-9-6.1 required Dr. Howard to inform Ketchup of the risks of the dental procedure at issue, the common law rule against requiring disclosure applies. *Verre v. Allen*, 175 Ga. App. 749 (334 SE2d 350) (1985) (common law rule applicable to dental procedure). Moreover, as noted above, both this Court and the Supreme Court of Georgia have held that it is beyond the power of this Court to expand the limited risk disclosure requirements imposed upon health care providers by OCGA § 31-9-6.1. It follows that the majority's attempt to do so, however well intentioned, ignores contrary Supreme Court of Georgia authority and invades the province of the General Assembly.

I am authorized to state that Presiding Judge Blackburn, Judge Ruffin and Judge Miller join in this opinion.

RUFFIN, Judge, concurring specially.

I concur in the judgment for the reasons set forth in Presiding Judge Andrews' special concurrence, with which I fully agree. I write separately only to address the majority's attempt to distinguish the

Supreme Court's recent decision in *Albany Urology Clinic v. Cleveland*.[52]

As the majority notes, the narrow issue to be decided in *Albany Urology Clinic* was whether a physician could be sued for failing to disclose his cocaine use to his patient before performing a surgical procedure. In analyzing this issue, however, the Court extensively discussed the state of the law governing the doctrine of informed consent. The Court expressly stated that

> [p]rior to 1988, Georgia physicians *were not required to disclose to their patients any of the risks associated with a particular medical treatment or procedure.* . . . As established by pre-1988 precedent, under the common law, evidence of a failure to reveal the risks associated with medical treatment *is not even admissible in support of a claim for professional negligence.* As recognized by Georgia's appellate courts, this *common law rule could be changed only by legislative act.*[53]

The Court then noted that the legislature modified the common law rule in 1998 by passing an informed consent statute, OCGA § 31-9-6.1. As the Court stated,

> [t]he Georgia informed consent statute *does not impose a general requirement of disclosure upon physicians*; rather, it requires physicians to disclose *only those factors listed in OCGA § 31-9-6.1 (a).* . . . [I]n situations not covered by the statute's language, *the common law rule must still govern*, as courts are without authority to impose disclosure requirements upon physicians in addition to those requirements already set forth by the General Assembly.[54]

It is abundantly clear that the majority's holding in this case — i.e., that physicians have a common law duty to inform their patients of the material risks of a proposed treatment or procedure — is directly contrary to the Supreme Court's statement in *Albany Urology Clinic* that there is no such common law duty. Indeed, the majority makes no attempt to reconcile its decision with the plain language of the Supreme Court's decision. Instead, the majority simply ignores such language, apparently on the grounds that it is dicta.

In my opinion, when the Supreme Court has clearly and unambiguously spoken on an issue, this Court should be extremely reluc-

---

[52] 272 Ga. 296 (528 SE2d 777) (2000).

[53] (Footnote omitted; emphasis supplied.) Id. at 298 (1).

[54] (Emphasis supplied.) Id. at 298-299 (1).

tant to dismiss such pronouncements as mere dicta. Even if I were inclined to treat Supreme Court statements as dicta, however, I would not do so in this case, as it is apparent that the Court's discussion of informed consent in *Albany Urology Clinic* was central to its analysis. Indeed, immediately after the extensive discussion quoted above, the Supreme Court stated that "[i]t follows that" the physician in question had no statutory or common law duty to disclose his drug use to his patient.[55] Although the majority treats the Court's analysis as mere dicta, it is apparent that the Supreme Court considered such analysis to be central to its decision. Under these circumstances, I do not believe it is appropriate for this Court to excise portions of the Supreme Court's opinion because we do not think they were technically necessary to decide the question presented.

Were I not constrained by Supreme Court precedent, I would be very sympathetic to the majority's argument that the informed consent doctrine should apply in Georgia. However, "the Court of Appeals is bound by decisions of the Supreme Court."[56] Because the Supreme Court has clearly spoken on this issue, I cannot agree with the majority's prospective recognition of the common law doctrine of informed consent.

I am authorized to state that Presiding Judge Andrews, Presiding Judge Blackburn and Judge Miller join in this special concurrence.

DECIDED NOVEMBER 29, 2000 — 

*Jones, Osteen, Jones & Arnold, Linnie L. Darden III*, for appellant.

*Brannen, Searcy & Smith, David R. Smith*, for appellee.

---

[55] Id. at 299 (1).
[56] *Hogan v. State*, 118 Ga. App. 398, 400 (163 SE2d 889) (1968).