BLAIR v. THE STATE.

The act entitled "An act to create a new charter for the city of
Columbus, and to consolidate and declare the rights and powers
of said corporation, and for other purposes," approved November
29th, 1890, is unconstitutional in so far as it provides for extend-
ing and exercising municipal police jurisdiction over and upon
territory adjacent to the city. This being so, a policeman had no
more power than any private person to make arrests on such adja-
cent territory, and no power whatever to arrest for the use of
abusive language tending to cause a breach of the peace, ad-
dressed at the moment to the policeman himself. The title of the
act affords no indication of any extension of power whatever be-
yond the corporate limits.

March 31, 1892. Argued at the last term.

Constitutional law. Criminal law. Arrest. Before
Judge MARTIN. Muscogee superior court. May term,
1891.

Conviction of assault with intent to murder; new
trial denied. The assault was committed by firing a
pistol on a policeman of Columbus, as he was about to
arrest the defendant just outside of the city limits.
The grounds of error are sufficiently indicated by the
decision.

M. H. BLANDFORD and CAMERON & McLESTER, for
plaintiff in error.

A. A. CARSON, solicitor-general, by J. H. WORRILL
and M. McMICHAEL, contra.

BLECKLEY, Chief Justice.

The constitution declares that "No law or ordinance
shall pass which refers to more than one subject-matter,
or contains matter different from what is expressed in
the title thereof." Code, §5067. The question is,
whether the latter part of this inhibitory provision has
not been violated by the legislature in enacting the
third section in the charter of the city of Columbus,
approved November 29th, 1890. The title of the act
constituting the charter reads thus: "An act to create

a new charter for the city of Columbus, and to consolidate and declare the rights and powers of said corporation, and for other purposes." The third section is in these words: " Be it further enacted by the authority aforesaid, that in addition to the territory embraced in the corporate lines, as set forth in the several acts mentioned in the preceding section, all the land and territory outside of said corporate lines, which lies within the State of Georgia and within one mile and one half in a straight line from any point of the corporate limits, shall be known as the police district of the city of Columbus, over which the municipal government of the city of Columbus shall have and exercise a limited power and authority only as follows:

"First. The mayor and aldermen of the city of Columbus shall have the sole and exclusive right to regulate the sale of spirituous and malt liquors within said police district, and to grant or refuse a license therefor; and they may put such terms, restrictions and conditions on the sales of such liquor as they may deem proper, but in no case shall a license be granted within said district for a less term than one year, and if any license is granted within said district, the fees thereof shall never be less than the amount of the license fee, within the corporate limits proper of the city of Columbus. All such fees shall be collected in the same manner as similar fees are collected in the city of Columbus and paid into the city treasury.

" Second. All laws and ordinances in force in the city of Columbus in reference to crimes or misdemeanors against the persons of citizens or individuals, against the habitations of persons, relative to property, against the public peace and tranquillity, against public morality and health, and offences committed by cheats and swindlers, and offences against public trade, against fraudulent or malicious mischief, shall be in force within the territory comprising the said police district, in the same

manner and to the same extent as they are in force
within the corporate limits of said city, and for the pur-
pose of preventing the commission of any and all of
said offences and suppressing the same, and in order to
apprehend violators of said laws, police jurisdiction is
hereby expressly given to the mayor and aldermen of
the city of Columbus, over the said entire territory
embraced in said police district, and to this end they
shall have the power to enforce said laws and ordinances
by the marshal and police department of the city of
Columbus, just as they may deem proper and necessary
to the full protection of the city. It is, however, ex-
pressly provided, that no obligation shall rest on the
principal [municipal?] authorities to establish any police
system within said district; they are hereby given the
power and right so to do, which right they may exer-
cise in full, partially or not at all, as in their judgment,
the best interest of the city of Columbus may require.
For the purposes set out in this section only shall such
police district be deemed or held to be a part of the city
of Columbus."

The title of the act affords no indication of any pur-
pose on the part of the General Assembly to clothe the
mayor and aldermen with any power whatever to be
exercised over persons or places beyond the corporate
limits of the city. The fair and reasonable import of
the words, "to create a new charter for the city of Col-
umbus," is that territorially the charter and the city
will be coextensive, that the boundaries of the city will
limit the range of the charter, and that all parts of the
State not embraced within the city limits, as defined by
the new charter, or as previously defined by law, would
remain unaffected by the legislation about to be enacted;
and the fair and reasonable import of the words, "to
consolidate and declare the rights and powers of said
corporation," is that the rights and powers to be consoli-
dated and declared would be such as are appropriate

to be exercised within the city. The power to legislate by ordinance for any place outside of the city is not suggested or intimated by these words, nor does any such suggestion or intimation arise from adding the words, "for other purposes," which, properly construed, would be understood to mean purposes appropriate to the subject-matter of the act (to wit, the creation of a new charter for the city of Columbus) not indicated in the phrase, "to consolidate and declare the rights and powers of said corporation." As each law must be limited to one subject-matter, there can be no implication that the phrase "and for other purposes" in the title of an act refers to purposes other than those naturally or ordinarily appropriate to the subject-matter expressly declared. If it be legitimate to comprehend within the scope of the act purposes more remote from the subject-matter than would usually be expected to be found associated with a subject-matter of that class, then these more remote purposes should be clearly indicated in the title of the act. In no other way could the constitutional scheme of confining each law to one subject-matter, and the body of the act to the scope of the title, be accomplished. It may be that what has just now been said applies more especially, if not exclusively, to the territorial element in a statute; but that is the element involved here. Would the title prefixed to this new charter of Columbus put any one on notice, either in the General Assembly or out of it, that any territory of the State was to be dealt with except the city? We think not; and any principle of construction or decision which would uphold the grant of power to legislate by ordinance, with no indication of such grant in the title of the act, for territory within a mile and a half of the city limits, would uphold a similar grant of power to legislate for territory extending to any distance, though it might be ten, twenty, thirty or fifty miles from those limits. The constitution intended

to protect the people against covert or surprise legislation, and we think the people of Muscogee county residing in the immediate neighborhood of Columbus might well claim surprise at this attempt to subject them to the municipal government of the city without extending the city limits so as to embrace the territory on which they reside. If they had no notice except such as could be derived from the title of the act, they must have been quite unprepared for such an important change in their relations to the municipality.

On the trial of the present case in the court below, the policeman alleged to have been assaulted should have been treated simply as a private citizen with reference to his power of making arrests on the territory adjacent to the city. He had no power to arrest for the use of abusive language addressed to himself tending to cause a breach of the peace. Under the code, §4372, no person can be called upon to answer for that species of offence until after indictment or presentment by a grand jury. As the trial proceeded on a wrong theory, it is unnecessary to do more than correct that theory now. The numerous questions and sub-questions growing out of it will not arise again.

The contention that the State was obliged to introduce all the witnesses who were present at the difficulty and in court at the time of the trial, is not supported by law or the practice which prevails in this State. The solicitor-general is as free to manage the State's case in his own way as is counsel for the accused to conduct the defence according to his own sense of prudence, utility and propriety. Hill *v.* Commonwealth (Va. 1892), 14 S. E. Rep. 330.          *Judgment reversed.*