## A08A0585. DOREIKA v. BLOTNER.
(666 SE2d 21)

JOHNSON, Presiding Judge.

This is a professional negligence case in which Paul Doreika alleged that he sustained serious injuries as a result of chiropractor

Gregg Blotner's treatment. Doreika specifically asserted that Blotner failed to inform him about the risks of neck adjustments or treatment alternatives for his neck before performing a neck adjustment which either caused a herniated disc or aggravated a pre-existing disc condition. The jury returned a verdict in favor of Blotner. Doreika appeals, alleging the trial court erred in refusing to give requested jury charges regarding the law on informed consent. Our duty in this case is to first determine whether the doctrine of informed consent applies to chiropractors in Georgia. If it does, we must then decide whether the trial court erred in not instructing the jury on informed consent in light of the evidence introduced at trial.

1. **Georgia's Informed Consent Law.**

We find that Georgia law required Dr. Blotner to obtain Doreika's informed consent prior to rendering chiropractic treatment. In *Ketchup v. Howard*,[1] this Court corrected dicta in old cases that had been carried forward for years. In doing so, we brought Georgia in line with that of the other 49 states by recognizing the common law doctrine of informed consent and expressly indicating that a medical professional must inform a patient of the material risks of a proposed treatment or procedure which are or should be known and must inform the patient of available alternatives to the proposed treatment or procedure.[2]

The source of this duty is three-fold. First, we need look no further than the Georgia and United States Constitutions. As the Supreme Court noted in *Cruzan v. Director, Mo. Dept. of Health*,[3] no right is more carefully guarded by the common law than an individual's right to possession and control of his own person free from restraint. The Due Process Clause of the Fourteenth Amendment to the federal constitution gives patients a constitutionally protected liberty interest which includes the right to refuse unwanted medical treatment.[4] The Supreme Court recognized that the common law duty of informed consent is a corollary to this constitutionally protected liberty interest and is firmly reflected in these constitutionally protected rights. Likewise, the Supreme Court of Georgia held that all persons have a liberty interest, protected by the Georgia Constitution, to make all decisions regarding their medical care, so long as they are legally competent.[5] This constitutionally protected liberty interest includes the right to refuse all medical treatment,

---

[1] 247 Ga. App. 54 (543 SE2d 371) (2000).

[2] Id. at 59 (1).

[3] 497 U. S. 261, 269 (110 SC 2841, 111 LE2d 224) (1990).

[4] Id.

[5] *State of Ga. v. McAfee*, 259 Ga. 579 (385 SE2d 651) (1989); *Zant v. Prevatte*, 248 Ga. 832 (286 SE2d 715) (1982).

even where the treatment is necessary to save the patient's life.[6] Clearly, "in the absence of the common law doctrine of informed consent, the constitutionally protected liberty interests that individuals enjoy to make all decisions regarding their medical treatment is rendered meaningless."[7]

The duty to obtain informed consent is also recognized in the ethical standards adopted by the various medical professional fields. While we discussed the ethical standards associated with the American Medical Association and American Dental Association in *Ketchup*, the same analysis applies to the ethical standards and policies adopted by the American Chiropractic Association. Section V of the American Chiropractic Association Code of Ethics provides as follows: "Doctors of chiropractic should employ their best good faith efforts to provide information and facilitate understanding to enable the patient to make an informed choice in regard to proposed chiropractic treatment. The patient should make his or her own determination on such treatment." And, the American Chiropractic Association Policies, one of which is entitled "Informed Consent," note:

> Informed consent is generally applied, from a legal standpoint, when measuring the degree of responsibility and/or liability of a doctor in malpractice cases. In other words, the fact that a patient submits to treatment and does so voluntarily does not in itself lessen the liability of the doctor.

> Today, the stand [sic] by which the doctor is judged is that of "informed consent". By that is meant, to what degree has the patient been informed of all of the potential consequences, dangers, and other factors, so that his consent is given with full knowledge of the inherent dangers to which he is exposed. Full knowledge in this sense could be construed as "informed consent" and would relieve the doctor of much liability, as there would be an assumption of the risk on the part of the patient.

> The concept of "informed consent" can also be applied to other contractual relationships such as

---

[6] See *McAfee*, supra; *Zant*, supra.
[7] *Ketchup*, supra.

> those for examination and treatment, which are
> every day occurrences in the doctor's office.

As with the American Medical Association and the American Dental Association, the American Chiropractic Association's ethical standards and policies embrace the doctrine of informed consent. And it is a well-settled principle that the standard of care is determined by the medical profession, not the courts.[8]

The duty to obtain informed consent is also rooted in the legislative enactment of OCGA § 31-9-6.1, which requires medical professionals to provide information to their patients concerning the risks of some, but not all, medical procedures. Although OCGA § 31-9-6.1 is a limited codification of the common law doctrine of informed consent, it expresses a clear adoption by the legislature to require disclosure of material risks generally recognized and accepted by reasonably prudent physicians which, if disclosed to a reasonably prudent person in the patient's position, could reasonably be expected to decline the proposed treatment or procedure because of the risk of injury that could result. This legislation has no effect on the recognition of the common law doctrine of informed consent.

The position adopted by the dissent in this case is the same position argued by Judge Andrews in his *Ketchup* special concurrence and resoundingly rejected by the majority of this Court in that case. *Ketchup* was not wrongly decided and should not be overruled. The dissent's position in this case would represent, if adopted, a gigantic step backward for the people of Georgia. Not only would Georgia once again be the only state in the nation refusing to recognize the common law doctrine of informed consent, but the dissent's position would render our constitutionally protected liberty rights and the medical canons of ethics meaningless. How can a patient be expected to make a decision about his treatment if the doctor rendering the treatment is not required to provide the patient with all the necessary information to enable the patient to make that decision?

Contrary to the dissent's argument, *Albany Urology Clinic v. Cleveland* [9] does not require a different result. The issue addressed in *Albany Urology* was whether a physician had a duty to disclose to his patients factors of his life, namely his drug use, which might adversely affect the physician's performance.[10] The case dealt specifically with the applicability of OCGA § 31-9-6.1 and did not decide

---

[8] *Ketchup*, supra at 60-61 (2).
[9] 272 Ga. 296 (528 SE2d 777) (2000).
[10] Id. at 298.

the issue of whether a physician has a common law duty to disclose the risks associated with a particular medical treatment or procedure. Clearly, the mention of the common law principle of informed consent in the case was dicta. Moreover, the Supreme Court has recently adopted our rationale in *Ketchup*, citing the case for the proposition that expert testimony is required in an informed consent case to establish whether the particular risks of the surgery were known or should have been known.[11] *Albany Urology* has only been cited once by the Supreme Court, and it has not been cited since *Ketchup* was decided in 2000. The dissent's attempt to overrule *Ketchup* is misplaced.

## 2. **Jury Instructions.**

Because Blotner had the duty to obtain Doreika's informed consent prior to performing the neck adjustment, and because the issue of informed consent represented a legal theory of recovery in the case, the trial court was obligated to give jury charges on this legal theory of recovery. The trial court's duty is to instruct the jury on the law as to "every controlling, material, substantial and vital issue in the case."[12] And failure to charge on any legal theory of recovery is harmful as a matter of law.[13] As a general rule, a requested charge should be given where it has been raised by the evidence, embraces a correct and complete principle of law, has not been substantially included in the general instructions given, and is specifically adjusted to the facts of the case.[14] Because the jury charges at issue in this case may be raised on retrial, we address each of Doreika's requested jury instructions.

(a) Doreika contends the trial court erred in failing to give proposed charge number 12 regarding ambiguity in consent:

> If you find that there exists any ambiguity concerning the Defendant's obtaining consent from the Plaintiff prior to performing the manipulation procedure on Plaintiff's neck, you are instructed to resolve any ambiguity against the Defendant doctor, if you also find that there existed an inequality of bargaining position between the two parties. In other words, if you find that the Defendant doctor was in a superior position with respect to knowledge of the procedure, as well as the risks, benefits and necessity for the

---

[11] See *Nathans v. Diamond*, 282 Ga. 804, 805 (1), n. 2 (654 SE2d 121) (2007).

[12] (Citations omitted.) *Fowler v. Gorrell*, 148 Ga. App. 573, 577 (2) (b) (251 SE2d 819) (1978).

[13] Id.

[14] See *SCM Corp. v. Thermo Structural Products*, 153 Ga. App. 372, 379 (7) (A) (265 SE2d 598) (1980).

procedure, then you are to resolve any ambiguities concerning the nature and extent of consent obtained by the doctor, if any, against him.

This language was taken from *Hubert v. Falconer*,[15] where this Court upheld a similar charge in a case involving a written informed consent form. In *Hubert*, the issue turned on whether the doctor had obtained a patient's consent through ambivalent disclosures in the informed consent form. This case does not present the same factual scenario.

Here, contrary to Doreika's argument, there is no evidence in the record of any contractual or written ambiguity for the jury to determine. Rather, the case turns on the credibility of the witnesses, which the trial court did charge to the jury. Doreika claims he did not give his informed consent for the procedure and Blotner claims he received informed consent for the procedure.

Given the undisputed fact that this case does not involve any ambiguity in the language of a written consent form, the trial court correctly determined that proposed jury charge number 12 was not a correct statement of the law and was not adjusted to the facts of this case. In order for a refusal to charge the jury to be error, the requests for jury instructions must be entirely correct and accurate, adjusted to the pleadings, law and evidence, and not otherwise covered in the general charge.[16] If any portion of the requested charge is "inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authored by the evidence," a refusal to charge does not constitute error.[17] The trial court did not err in refusing to give this requested jury charge.

(b) Doreika contends the trial court erred in failing to give proposed jury charges number 17, number 18, and number 19 regarding informed consent. Proposed jury charge number 17 stated as follows:

The Plaintiff contends that the Defendant failed to obtain his informed consent. Under Georgia common law, a medical professional is required to obtain a patient's informed consent prior to treating him. If you find that the Defendant failed to obtain the Plaintiff's informed consent to treat his neck, you are authorized to find that the Defendant was

---

[15] 248 Ga. App. 243, 244 (1) (545 SE2d 680) (2001).

[16] See *A.A.L., Inc. v. Colonial Pipeline Co.*, 280 Ga. App. 237, 240 (3) (633 SE2d 560) (2006).

[17] (Citations and punctuation omitted.) *Roberts v. Chapman*, 228 Ga. App. 365, 367 (2) (492 SE2d 244) (1997).

negligent, and you must then determine whether this negligence caused or contributed to Plaintiff's injuries and damages.

Proposed jury charge number 18 stated as follows:

A medical professional, including a chiropractor, must inform a patient of the material risks of a proposed treatment or procedure which are or should be known, and he must inform a patient of available alternatives to the proposed procedure or treatment. If you find that the Defendant did not inform the Plaintiff of the risks of the treatment at issue and available alternatives then you are required to find that there was no informed consent for the procedure.

Proposed jury charge number 19 stated as follows:

The requirement that there be informed consent prior to medical treatment is satisfied when a medical professional, including a chiropractor, fully informs a patient of the risks of and alternatives to the proposed treatment so that the patient's right to decide is not diminished by a lack of relevant information.

These proposed jury requests sought to instruct the jury about the informed consent theory of recovery and the effect of Blotner's failure, if any, to obtain Doreika's informed consent. As stated previously, the trial court erred in refusing to give any jury instruction on Doreika's informed consent theory of recovery. The question we must address is whether the trial court erred in refusing to give Doreika's proposed jury instructions.

Clearly, proposed jury request number 17 is a correct statement of the law and is adjusted to the evidence. The trial court erred in failing to give this instruction. In addition, proposed requests number 18 and number 19 provide the jury with a description of the theory of recovery. However, those two proposed jury charges appear duplicitous, so the trial court erred in failing to give only one of the requested charges. In addition, proposed jury charge number 18 should inform the jury that they are "authorized" not "required" to find a lack of informed consent. Blotner argues that the trial court's refusal to give the requested charges was not error because a herniated disc was not a material risk of which he needed to inform

Doreika. However, it is the jury's province to decide what is and is not a material risk given the evidence in the case.[18]

A jury charge on informed consent is necessary if informed consent is a legal theory raised by the plaintiff and borne out by the evidence in the case. Here, the trial court erred by refusing to give a jury charge on informed consent since it was a legal theory of recovery in the case.

*Judgment reversed and case remanded. Barnes, C. J., Smith, P. J., Ellington, Phipps, Adams and Bernes, JJ., concur. Ruffin, P. J., Blackburn, P. J., Andrews, Miller and Mikell, JJ., dissent.*

ANDREWS, Judge, dissenting.

Because the General Assembly has defined the doctrine of informed consent for medical procedures in OCGA § 31-9-6.1, and the chiropractic neck adjustment at issue is not a procedure covered by the informed consent provisions set forth in OCGA § 31-9-6.1, the trial court correctly refused to instruct the jury on the informed consent claim.

Paul J. Doreika's action for professional negligence against his chiropractor, Gregg M. Blotner, D.C., was tried before a jury, which rendered a verdict in favor of Dr. Blotner. Mr. Doreika claimed that a neck adjustment performed on him by Dr. Blotner injured him by either causing a herniated disc or aggravating a pre-existing disc condition, and that he was required to undergo surgery to repair the injury. Mr. Doreika did not claim that the manner in which Dr. Blotner performed the neck adjustment was negligent. Rather, the claim was that Dr. Blotner was negligent because he performed the neck adjustment without doing an examination and history on Mr. Doreika adequate to establish a clinical basis for the adjustment, and without obtaining Mr. Doreika's informed consent for the adjustment.[19]

Citing this Court's opinion in *Ketchup v. Howard*, 247 Ga. App.

---

[18] See generally *Nat. Life &c. Ins. Co. v. Crew*, 119 Ga. App. 573, 575 (1) (168 SE2d 181) (1969) (whether a misrepresentation is material, like questions as to negligence, proximate cause and similar matters, should ordinarily be submitted to the jury).

[19] Even though Mr. Doreika's complaint did not specifically assert a negligence claim based on lack of informed consent, the case was tried before the jury, without objection, on expert testimony setting forth varying opinions on the standard of care for chiropractors with respect to obtaining informed consent, and disputing whether the standard required that Dr. Blotner inform Mr. Doreika of the risk of disc injury and alternative treatment before performing the neck adjustment. Accordingly, the claim that Dr. Blotner was negligent for failing to obtain informed consent was addressed during the trial by express or implied consent of the parties. OCGA § 9-11-15 (b); *Holliday v. Jacky Jones Lincoln-Mercury*, 251 Ga. App. 493, 496 (554 SE2d 286) (2001).

54 (543 SE2d 371) (2000), Mr. Doreika enumerates as error the trial court's refusal, over his objection, to give requested instructions to the jury based on *Ketchup* that Georgia law required Dr. Blotner to obtain Mr. Doreika's informed consent for the neck adjustment by informing him of the material risks of and the available alternatives to the proposed treatment. In *Ketchup*, this Court held that Georgia "will recognize the common law doctrine of informed consent" and that "a medical professional in Georgia . . . must inform a patient of the material risks of a proposed treatment or procedure which are or should be known, and they must inform a patient of available alternatives to the proposed procedure or treatment." Id. at 54, 59. *Ketchup* imposed these informed consent requirements (prospectively only) on dentists performing a dental procedure, even though the procedure at issue was not covered by the doctrine of informed consent as defined under the provisions of OCGA § 31-9-6.1. Id. at 54-55. Relying on *Ketchup*, the majority now finds that a chiropractor performing the neck adjustment at issue is a "medical professional" performing a "treatment or procedure" under the common law of informed consent, and that the trial court committed reversible error by failing to instruct the jury that Dr. Blotner was required to obtain Mr. Doreika's informed consent. Instead of applying *Ketchup* to impose new informed consent requirements on a case-by-case basis, this Court should recognize that it had no authority in *Ketchup* to adopt a common law version of informed consent at odds with the General Assembly's definition of informed consent in OCGA § 31-9-6.1.

The General Assembly has codified the informed consent doctrine in Georgia in OCGA § 31-9-6.1, which sets forth six categories of information that must be disclosed by medical care providers to patients before the patients undergo specified surgical or diagnostic procedures. The trial court did not err by refusing to give Mr. Doreika's requested informed consent instructions because the neck adjustment performed by the chiropractor in this case is not covered by the informed consent provisions of OCGA § 31-9-6.1. Our Supreme Court held in *Albany Urology Clinic v. Cleveland*, 272 Ga. 296 (528 SE2d 777) (2000), that there was no common law doctrine of informed consent in Georgia prior to the enactment of OCGA § 31-9-6.1, and that, after the General Assembly codified the informed consent doctrine in OCGA § 31-9-6.1, it was beyond the power of the Supreme Court or this Court to expand upon those statutory informed consent provisions. Id. at 298-299; see *Ketchup*, 247 Ga. App. at 74-75 (Andrews, P. J., concurring specially joined by Blackburn, P. J., Ruffin and Miller, JJ.). This Court erred in *Ketchup* by disregarding the Supreme Court holding in *Albany Urology Clinic*

as dicta. See *Ketchup*, 247 Ga. App. at 75-76 (Ruffin, J., concurring specially joined by Andrews, P. J., Blackburn, P. J., and Miller, J.). Contrary to the majority's claim, the Supreme Court's subsequent opinion in *Nathans v. Diamond*, 282 Ga. 804 (654 SE2d 121) (2007), did not abandon the holding in *Albany Urology Clinic* and did not endorse *Ketchup*'s imposition of informed consent requirements in addition to those set forth in OCGA § 31-9-6.1. Rather, the facts in *Nathans* show that the case concerned a claim that a medical doctor failed to comply with informed consent requirements on a surgical procedure covered by the provisions of OCGA § 31-9-6.1. Id. at 804.

It follows that *Ketchup* is contrary to the General Assembly's codification of the informed consent doctrine in OCGA § 31-9-6.1, and contrary to the Supreme Court's decision in *Albany Urology Clinic*, supra, recognizing that the power to define the doctrine of informed consent in Georgia rests, not with the judiciary, but with the people through their elected representatives in the General Assembly. Nevertheless, the majority opinion implies that to return to the informed consent doctrine, as codified by the General Assembly, would violate the United States and Georgia Constitutions, and would represent "a gigantic step backward for the people of Georgia" from the expanded informed consent requirements preferred by this Court in *Ketchup*. It is not within the jurisdiction of this Court to hold forth on the constitutionality of a statute, nor is it the province of this Court to chide the judgment of the General Assembly. The Georgia Constitution requires this Court to conform its decisions to statutes lawfully enacted by the General Assembly and to the binding precedents of the Supreme Court of Georgia. *Fullwood v. Sivley*, 271 Ga. 248, 254 (517 SE2d 511) (1999); Ga. Const. of 1983, Art. VI, Sec. V, Par. III; Art. VI, Sec. VI, Par. VI. Because *Ketchup* conforms to neither, it is entitled to no deference under the doctrine of stare decisis and should be overruled. I respectfully dissent from the majority opinion applying and extending the holding of *Ketchup*.

I am authorized to state that Presiding Judge Ruffin, Presiding Judge Blackburn, Judge Miller, and Judge Mikell join in this dissent.

DECIDED JUNE 18, 2008 —
RECONSIDERATION DENIED JULY 23, 2008

*Warshauer, Poe & Thornton, Steven R. Thornton*, for appellant.

860

*Owen, Gleaton, Egan, Jones & Sweeney, Milton B. Satcher III, Melissa P. Reading*, for appellee.