S08G2016. BLOTNER v. DOREIKA.
(678 SE2d 80)

HUNSTEIN, Presiding Justice.

We granted certiorari to consider whether the Court of Appeals erred by adopting a common law doctrine of informed consent and applying it to chiropractors. *Doreika v. Blotner*, 292 Ga. App. 850 (1) (666 SE2d 21) (2008). Because Georgia does not recognize a common law duty to inform patients of the material risks of a proposed treatment or procedure, see *Albany Urology Clinic v. Cleveland*, 272 Ga. 296 (528 SE2d 777) (2000); because chiropractic treatment is not included among the matters for which informed consent is required by OCGA § 31-9-6.1; and because the Legislature has not otherwise required informed consent for chiropractic treatment, compare OCGA § 43-34-68 (informed consent requirements for persons who undergo acupuncture), we reverse the holding of the Court of Appeals.

1. The Court of Appeals first erred by holding that Georgia recognizes the common law doctrine of informed consent. As this Court expressly stated in *Albany Urology Clinic v. Cleveland*,

[p]rior to 1988, Georgia physicians were not required to

disclose to their patients any of the risks associated with a particular medical treatment or procedure. Hence, before 1988, a physician's "silence as to risk" was not actionable and could not be the basis of a patient's claim of fraud. Although a physician did then and does now have a common law duty to answer truthfully a patient's questions regarding medical or procedural risks, absent such inquiry the common law of this state does not designate the failure to disclose such risks a fraud that may vitiate a patient's consent to medical procedures. As established by pre-1988 precedent, under the common law, evidence of a failure to reveal the risks associated with medical treatment is not even admissible in support of a claim for professional negligence.

As recognized by Georgia's appellate courts, this common law rule could be changed only by legislative act. That occurred in 1988, when the General Assembly adopted the Informed Consent Doctrine, OCGA § 31-9-6.1, which became effective on January 1, 1989. Section 31-9-6.1 sets forth six specified categories of information that must be disclosed by medical care providers to their patients before they undergo certain specified surgical or diagnostic procedures. The Georgia informed consent statute does not impose a general requirement of disclosure upon physicians; rather, it requires physicians to disclose only those factors listed in OCGA § 31-9-6.1 (a).

(Footnotes omitted.) Id., 272 Ga. at 298-299 (1).

The causes of action asserted by the plaintiffs in *Albany Urology Clinic* were predicated upon the defendant physician's failure to disclose a matter *not* included among those listed in OCGA § 31-9-6.1 (a). In reversing the Court of Appeals' opinion that the defendant physician was under an affirmative duty to disclose the matter, this Court concluded by stating:

> Because OCGA § 31-9-6.1 is in derogation of the common law rule against requiring physicians to disclose medical risks to their patients, it must be strictly construed and cannot be extended beyond its plain and explicit terms.

(Footnote omitted.) *Albany Urology Clinic*, supra, 272 Ga. at 299 (1). This Court specifically found that the Court of Appeals had

> impermissibly expanded upon the statutory disclosures required of health care providers, and imposed upon health

> care providers a new, judicially-created, duty of disclosure. . . . [T]hat action was beyond the scope of the appellate court's authority.

Id.

Notwithstanding this plain language, the Court of Appeals chose to rely upon its opinion in *Ketchup v. Howard*, 247 Ga. App. 54 (543 SE2d 371) (2000), to the effect that *Ketchup*

> corrected dicta in old cases . . . [and] brought Georgia in line with that of the other 49 states by recognizing the common law doctrine of informed consent and expressly indicating that a medical professional must inform a patient of the material risks of a proposed treatment or procedure which are or should be known and must inform the patient of available alternatives to the proposed treatment or procedure.

(Footnote omitted.) *Doreika v. Blotner*, supra, 292 Ga. App. at 851 (1). Although *Ketchup* was rendered nine months after *Albany Urology Clinic*, supra, its holding did not come before this Court because the petition for writ of certiorari filed in that case was dismissed. See 247 Ga. App. at 898. We now hold that *Ketchup* was wrongly decided and is hereby overruled.

We find no merit in the reasons given by the Court of Appeals for not applying *Albany Urology Clinic*, supra. The Court of Appeals erred by asserting that our holding regarding the common law of this State was dicta, rather than properly recognizing that *Albany Urology Clinic* directly controls the resolution of the issue present in this case. Contrary to the Court of Appeals' assertion, this Court clearly did not "adopt[ their] rationale in *Ketchup*," *Doreika v. Blotner*, supra, 292 Ga. App. at 854 (1), merely because we referenced that case in a footnote in *Nathans v. Diamond*, 282 Ga. 804 (654 SE2d 121) (2007), in the course of rejecting an argument unrelated to the merits of *Ketchup*'s holding.[1] Finally, given that the holding in *Albany Urology Clinic* was predicated on well-established appellate case law, it is of no significance that this Court has not cited to that opinion more frequently.

Accordingly, because the opinion of the Court of Appeals impermissibly "imposed upon [chiropractors] a new, judicially-created,

---

[1] *Nathans*, supra, involved a medical malpractice claim arising out of a procedure subject to the requirements of OCGA § 31-9-6.1. In footnote 2, the Court deemed "incorrect" the contention that no expert affidavit was necessary to support the plaintiffs' informed consent claim. *Nathans*, supra, 282 Ga. at 805, n. 2.

duty of disclosure . . . [that] was beyond the scope of the appellate court's authority," *Albany Urology Clinic*, supra, 272 Ga. at 299 (1), we reverse the Court of Appeals.

2. Contrary to the Court of Appeals' statement that OCGA § 31-9-6.1 "has no effect on the recognition of the common law doctrine of informed consent," *Doreika v. Blotner*, supra, 292 Ga. App. at 853 (1), the doctrine of informed consent for health procedures and treatment is defined in Georgia exclusively by statutes and regulations. There is no question that chiropractic treatments are not among the procedures designated in OCGA § 31-9-6.1 for which informed consent is required.[2] The General Assembly has signaled its willingness to codify informed consent requirements in other areas of health care by its enactment of not only OCGA § 31-9-6.1 but also of OCGA § 43-34-68 (informed consent requires three specified items to be disclosed to patients of acupuncturists); OCGA § 31-9A-3 (informed consent required before abortion performed on pregnant woman); and OCGA § 37-3-163 (informed consent requirement for administration of medication to mental patients). Nevertheless, no such statutory provision has been enacted in regard to the patients of chiropractors. See OCGA § 43-9-1 et seq.

The Legislature has also vested authority in the boards that oversee health care professionals to adopt rules and regulations to regulate those professionals. Several of those boards have responded by adopting rules to require certain health care professionals to obtain informed consent. See, e.g., Ga. Comp. R. & Regs. 135-7-.01 (Georgia Composite Board of Professional Counselors, Social Workers and Marriage and Family Therapists rule requiring professional counselors and social workers to obtain informed consent); 290-9-43-.14 (Department of Human Resources rule requiring informed consent from a patient being admitted into a hospice home care program); 360-6-.16 (Composite State Board of Medical Examiners rule listing the informed consent requirements that acupuncturists must obtain); 480-13-.09 (Georgia State Board of Pharmacy

---

[2] We recognize that the Legislature revisited OCGA § 31-9-6.1 without taking any measures to limit the application of *Ketchup v. Howard*, supra, 247 Ga. App. at 54, and that, under cases such as *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137 (1) (637 SE2d 14) (2006), that inaction might be construed as indicating the Legislature's agreement with the holding in *Ketchup*. In this case, however, we do not find that inaction significant. *Ketchup* was rendered on November 29, 2000. The only time since then that the Legislature has revisited OCGA § 31-9-6.1 was during its 2001 session, when *Ketchup* was merely weeks old and the petition for certiorari was still pending. See Case No. S01C0562, filed January 2, 2001 and dismissed January 19, 2001. Furthermore, the Legislature revisited the statute solely in order to make a minor, editorial change. See Ga. L. 2001, p. 4, § 31 (5) (striking the superfluous "if" from the beginning of Paragraph (3) of subsection (e), which exempts disclosure "if" situations in Paragraphs (1)-(5) exist). Given these circumstances, we will not interpret the Legislature's inaction in regard to *Ketchup* as signaling its agreement with that opinion.

rule requiring informed consent for a patient prescribed investigational drugs); 510-4-.02 (3) (j) (State Board of Examiners of Psychologists rule requiring psychologists to obtain informed consent when providing assessment, therapy, counseling, or consulting services). Although such authority is likewise vested in the Georgia Board of Chiropractic Examiners, see OCGA § 43-9-6.1, that board has not chosen to promulgate any rules or regulations requiring chiropractors to obtain the informed consent of their patients. See Ga. Comp. R. & Regs. 100-10-.01 (Georgia Board of Chiropractic Examiners rule defining reasonable care and skill).

It thus appears that there is no statutory or regulatory requirement in Georgia that chiropractors obtain a patient or client's informed consent. Because, as stated in Division 1, supra, Georgia does not recognize a common law doctrine of informed consent, the trial court correctly refused to instruct the jury on the informed consent doctrine. The Court of Appeals erred by reversing the trial court.

*Judgment reversed. All the Justices concur, except Sears, C. J., and Carley, J., who concur specially.*

CARLEY, Justice, concurring specially.

I believe that Georgia should recognize a broader informed consent doctrine than that currently set forth in OCGA § 31-9-6.1. However, based on the doctrines of stare decisis and separation of powers, I am compelled to join the majority opinion in overruling *Ketchup v. Howard*, 247 Ga. App. 54 (543 SE2d 371) (2000), and in reversing the decision of the Court of Appeals in the instant case, which erroneously relied upon *Ketchup v. Howard*.

As explained in Division 1 of the majority opinion, this Court stated in *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 298-299 (1) (528 SE2d 777) (2000), that Georgia does not recognize the common law doctrine of informed consent, and that the "Georgia informed consent statute does not impose a general requirement of disclosure upon physicians; rather, it requires physicians to disclose only those factors listed in OCGA § 31-9-6.1 (a). [Cits.]" I dissented in *Albany Urology Clinic v. Cleveland*, because I believed that the "appeal [was] controlled by the principle that consent which is obtained by a material misrepresentation is invalid, since fraud vitiates all contracts. [Cit.]" *Albany Urology Clinic v. Cleveland*, supra at 305. Now Presiding Justice Hunstein and Justice Thompson joined my dissenting opinion, but it of course did not prevail, and instead the majority opinion plainly established that there is no common law doctrine of informed consent in Georgia. *Albany Urology Clinic v. Cleveland*, supra at 298-299 (1). Although that opinion was not unanimous, it nevertheless became binding precedent on all

Georgia courts. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI; *Life Ins. Co. of Ga. v. Lawler*, 211 Ga. 246, 251 (1) (85 SE2d 1) (1954).

In *Ketchup v. Howard*, the Court of Appeals failed to follow the clear precedent of *Albany Urology Clinic*, by erroneously characterizing this Court's holding as dicta and by improperly finding that Georgia recognizes the common law doctrine of informed consent. *Ketchup v. Howard*, supra at 65 (5).

> "The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it. (Cits.)" [Cit.]

*Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999). Because *Ketchup v. Howard* violated the doctrine of stare decisis by contradicting settled law, it must be overturned.

Moreover, *Ketchup v. Howard* also violated the equally important principle of separation of powers between the judiciary and the legislature. " 'The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature.' [Cit.]" *Mason v. The Home Depot U.S.A.*, 283 Ga. 271, 276 (3) (658 SE2d 603) (2008). Because the General Assembly has codified the informed consent doctrine, the Court of Appeals had no authority to adopt a different version of informed consent, as it did in *Ketchup v. Howard*.

Nevertheless, I empathize with Presiding Judge Johnson's desire that Georgia be brought in line with other states by recognizing a broader informed consent doctrine under which "a medical professional must inform a patient of the material risks of a proposed treatment or procedure which are or should be known and must inform the patient of available alternatives to the proposed treatment or procedure. [Cit.]" *Doreika v. Blotner*, 292 Ga. App. 850 (1) (666 SE2d 21) (2008). Of course, any such change to the informed consent statute must be made by the legislature, not the courts. Until then, the role of the courts is to construe the law as it exists, and since the Court of Appeals failed to do that in this case, its decision must be reversed.

I am authorized to state that Chief Justice Sears joins in this special concurrence.

DECIDED JUNE 8, 2009.

*Owen, Gleaton, Egan, Jones & Sweeney, H. Andrew Owen, Jr., Milton B. Satcher III, Melissa R. Phillips Reading,* for appellant.

*Warshauer, Poe & Thornton, Lyle G. Warshauer, Steven R. Thornton,* for appellee.

*Donald J. Palmisano, Jr., Peters & Monyak, Robert P. Monyak, Jeffrey S. Bazinet, McGarahan, Villines & Honis, Aubrey T. Villines, Jr., Heidi A. Honis, J. Marcus Edward Howard,* amici curiae.