[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12561
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00521-CAP


AMBER C. MAUGHON,

　　　　　　　　Plaintiff - Appellant,

versus

CITY OF COVINGTON,
OFFICER KEVIN FULLER,
in his individual capacity,

　　　　　　　　Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 28, 2013)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Amber Maughon appeals from the district court's grant of summary judgment in favor of the City of Covington and Officer Kevin Fuller in a 42 U.S.C. § 1983 action.  Maughon's allegations stem from her arrest for simple battery at her home and a later incident involving the deletion of a photograph from her cell phone. On appeal, Maughon argues that: (1) the district court erroneously concluded that Officer Fuller was entitled to qualified immunity for making a warrantless arrest outside his jurisdiction; (2) the district court erroneously concluded that Officer Fuller was entitled to qualified immunity for seizing Maughon's camera; and (3) on remand, the district court should exercise supplemental jurisdiction over Maughon's state law claims.  After careful review, we affirm.

We review de novo the district court's disposition of a summary judgment motion based on qualified immunity.  Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir.2002).  Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment as to a claim when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To show that there is a genuine issue for trial, a nonmoving party must go beyond the pleadings and designate specific facts.  See Celotex Corp. v Catrett, 477 U.S. 317, 324 (1986).

Moreover, where the plaintiffs version of the facts is blatantly contradicted by the record such that no reasonable jury could believe it, the court should not adopt

2

that version of facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007). This is particularly true where, as here, the relevant facts were preserved by in-car video or audio recording. See id. at 380-81. In such a case, we adopt the version of facts as depicted in the video and audio for purposes of reviewing a ruling on a motion for summary judgment. Id.

The relevant events began on May 29, 2010, when Maughon got into an altercation at her son's baseball game in Covington, Georgia with Crystal Densmore, the girlfriend of Maughon's ex-husband, Matthew West. Following the incident, Densmore called the Covington Police Department (in Newton County), and Officer Kevin Fuller went to the baseball field. Densmore told Officer Fuller that Maughon had threatened to kill her, pushed her, and scratched her. Officer Fuller took statements from Densmore, West, and West's mother, and observed scratch marks on Densmore's shoulder. Maughon had already returned to her home in Walton County.

Fuller intended to obtain an arrest warrant for Maughon the day after the incident. Later on the evening of the 29th, however, Georgia State Trooper Cal Burton, with Post 46 in Monroe, Georgia (in Walton County), called Officer Fuller to relay that he had information concerning the case and asked what Fuller was doing about Maughon's arrest. Burton is a friend of Densmore's. That same evening, a Newton County dispatcher informed Fuller that the Walton County Sheriff's Office

3

had contact with Maughon. Fuller then told a Walton County dispatcher that he was "gonna take a warrant out on her," and said he would ask his sergeant if he could meet the Walton County Lieutenant to pick up Maughon. The dispatcher said that Maughon lived right near the county line, and Fuller's sergeant gave Fuller permission to go to Maughon's house to take custody of her.

When Officer Fuller arrived at Maughon's house, Maughon was standing in the threshold of her front door wearing only a t-shirt and her underwear. Officer Fuller told Maughon he had a warrant for her arrest and asked her for identification, whereupon Maughon led Officer Fuller to her vehicle. At that point, Walton County Sheriff's Deputy Joseph Broccoli arrived and observed what he believed was Maughon trying to get away from Fuller.

When Maughon was opening her vehicle, Fuller attempted to arrest her, but Maughon physically resisted the arrest. Officer Fuller then wrestled with Maughon and told her to cooperate or she would be pepper sprayed. Broccoli told her to calm down and comply with Fuller's instructions after which she began to cooperate. Fuller took Maughon to the Newton County Jail and she was charged with simple battery for the incident at the baseball game. Later, she was also charged with making terroristic threats. A grand jury returned an indictment with both charges, and a criminal prosecution is currently underway.

4

In a related incident, on September 26, 2010, Officer Fuller and another officer, Grant Satterfield, were dining at the Longhorn Restaurant in Covington, Georgia (the "Longhorn incident"). Maughon is employed as a server there. Upon seeing the officers, Maughon asked an off-duty employee to take a picture of Fuller using Maughon's cell phone. The officers observed this, and Satterfield asked for the Longhorn manager, who then deleted the photo at the direction of the police.

Maughon later filed this action concerning both her arrest and the interaction at Longhorn. The district court granted summary judgment to Fuller and the City of Covington. This timely appeal -- only as to the allegations against Fuller -- follows.

First, we disagree with Maughon's argument that Officer Fuller was not entitled to qualified immunity on the false arrest claim. "As we have often observed, [q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009) (quotation omitted). The doctrine of qualified immunity allows officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the "plainly incompetent or one who is knowingly violating the federal law." Id. (quotation omitted).

5

"[T]o receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. at 1205 (quotation omitted). A government official acts within her discretionary authority if the actions were (1) "undertaken pursuant to the performance of [his] duties" and (2) "within the scope of [his] authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). In other words, when determining the scope of discretionary authority, a court looks to the general nature of a defendant's action, not the specific unconstitutional conduct. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (providing that "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act"). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." Id. (quotation omitted). "Of course, we must be sure

6

not to characterize and assess the defendant's act at too high a level of generality" but instead "we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint." Harland, 370 F.3d at 1266.

If a government official was acting within the scope of his discretionary authority, "the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." McCullough, 559 F.3d at 1205. To do so, the plaintiff must demonstrate: first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers, and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. Id. We need not conduct this qualified immunity analysis in any specific order; rather, we are permitted to exercise our sound discretion in deciding which prong of this inquiry to address first. Id. In assessing the clearly-established prong, we ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quotation omitted). Thus, in order for a plaintiff to show that a constitutional violation was clearly established, she must show (1) "that a materially similar case has already been decided, giving notice to the police"; (2) "that a broader, clearly established principle should control the novel facts in this situation"; or (3) "this case fits within the exception of conduct which so obviously violates [the]

7

constitution that prior case law is unnecessary." Keating v. City of Miami, 598 F.3d 753, 766 (11th Cir. 2010) (quotation omitted).

The Fourth Amendment guarantees that all individuals are "secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Detaining someone on the basis of a false arrest creates a cognizable claim under § 1983. Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996). An arrest made with probable cause, however, constitutes "an absolute bar to a section 1983 action for false arrest." Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990). "Probable cause [to arrest] exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quotation omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

In this case, Maughon does not claim that Officer Fuller did not have probable cause to arrest her for simple battery. This is likely because the record indisputably shows that Fuller had a reasonable belief that Maughon had committed a crime based

on: (1) a written statement by Densmore describing the incident between herself and Maughon, (2) Fuller's observation of scratches on Densmore's shoulder that purportedly were made by Maughon, and (3) two eyewitness accounts of the incident. Thus, we agree that Officer Fuller had probable cause to arrest Maughon.

Maughon seems to argue instead that because Fuller was outside of his jurisdiction when he arrested her, Fuller was not acting within his discretionary authority, and in addition, the arrest was unconstitutional. To begin with, there can be no doubt that Fuller has met the first prong of the discretionary authority test -- whether the act was undertaken pursuant to the performance of his duties -- because, when making the arrest, he was acting undertaking an act clearly within the official responsibilities of a police officer. See Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003). As for the second prong -- whether the act was within the scope of his authority -- we must "ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." See Harbert, 157 F.3d at 1282. Viewing the arrest in this way, we cannot say that Fuller was acting outside of his authority. As the record shows, during the arrest, Officer Fuller was acting with the permission of his supervisor in Newton County, in collaboration with Walton County, in the presence of a Walton

9

County officer, and very close to the Newton-Walton county line.[1]  On this record,

we conclude that Fuller has shown that he was acting -- both literally and figuratively

-- within the "outer perimeter" of his discretionary duties when he arrested Maughon

in Walton County.

Because Fuller was acting within his discretionary authority, Maughon now

must show that the arrest itself was unconstitutional under clearly established law.

We are unpersuaded.  Again, so long as there is probable cause for a plaintiff's

warrantless arrest, the Fourth Amendment is not violated.  Wood, 323 F.3d at 878;

see also Brown v. City of Hunstville, Ala., 608 F.3d 724, 734 (11th Cir. 2010)

(providing that "the existence of probable cause at the time of arrest is an absolute bar

---

[1] We recognize that under Georgia law, "a peace officer has power of arrest only in the territory of the governmental unit by which he was appointed, but there are exceptions to this rule."  Hastings v. State, 441 S.E.2d 83, 84 (Ga. App. 1994).  For example, a law enforcement officer may make an arrest without a warrant for an offense committed in his presence, even if the arrest is outside of his jurisdiction.  Delong v. Domenici, 610 S.E.2d 695, 698 (Ga. App. 2005).  Similarly, if a crime occurs on a boundary line between city and county, jurisdiction is proper in either venue.  Criddle v. State, 712 S.E.2d 569, 571 (Ga. App. 2011).

To argue that Fuller illegally arrested her, Maughon cites several state and federal cases, none of which is compelling.  Two are unrelated cases about medical care.  Albany Urology Clinic, P.C. v. Cleveland, 528 S.E.2d 777 (Ga. 2000); Blotner v. Doreika, 678 S.E.2d 80 (Ga. 2009).  A third is a case from 1892 that addresses the relationship between an incorporated city and its neighboring, unincorporated county.  Blair v. State, 17 S.E. 96 (Ga. 1892).  Another case cited was reversed based on a subsequent finding of probable cause.  Brown v. Camden County, Ga., 583 F. Supp. 2d 1358 (S.D. Ga. 2008), rev'd, Brown v. Smith, 342 F. App'x 449 (11th Cir. 2009). The last one, Herren, is cited for the proposition that if there was ample time to obtain a warrant then there should be no qualified immunity.  Herren v. Bowyer, 850 F.2d 1543 (11th Cir. 1988). However, Herren was decided on a different issue and Maughon is simply relying on dicta, which is not binding on us.  Id. at 1547 n.7.

10

to a subsequent constitutional challenge to the arrest"). Moreover, Maughon has failed to cite any binding authority clearly establishing, for purposes of the qualified immunity analysis, that an extra-jurisdictional arrest supported by arguable probable cause violates the Fourth Amendment of the United States Constitution. Thus, Fuller is entitled to qualified immunity on the federal false arrest claim.

We similarly find no merit to Maughon's claim that Officer Fuller was not entitled to qualified immunity for seizing Maughon's camera during the Longhorn incident. To show that Officer Fuller seized her phone and directed that the photos on it be deleted, the only evidence Maughon introduced was the affidavit of Terry Tallow, manager of the Longhorn Steakhouse, where Officer Fuller and Officer Satterfield were dining. Tallow's affidavit says that, "[t]he officer then asked that the picture on the camera phone be deleted but could not figure out how to work the phone. Thus, I deleted a picture from Amber Maughon's camera phone, at the Officer's request, and returned the phone to Ms. Maughon." However, Tallow's affidavit does not indicate which of the two officers asked her to delete the photo. Accordingly, as the district court observed, Maughon failed to come forward with any evidence to demonstrate that Officer Fuller took her phone or caused the photo to be deleted. Nor, as the district court further concluded, has Maughon cited any binding, clearly established law sufficient to notify Fuller that asking the manager to delete the

11

photo from the phone (or, perhaps, accompanying an officer who asked that the photo be deleted) would violate the plaintiff's constitutional rights.  Therefore, Fuller is entitled to qualified immunity on the federal claim concerning the Longhorn incident.

Finally, we reject Maughon's claim that the district court should take supplemental jurisdiction of her state law claims on remand.  As we've already determined, the district court properly granted summary judgment to Fuller on all of Maughon's federal claims.  Therefore, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Maughon's state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988).

**AFFIRMED.**