A99A1724. WILBORN v. BLAKE.
(530 SE2d 778)

PHIPPS, Judge.

Valerie Blake brought this medical malpractice action against Dr. Wesley Wilborn. The jury returned a verdict awarding Blake $133,750 in damages. Wilborn appeals the final judgment. The primary issue is whether the testimony of Blake's expert witness was sufficient to support a finding of professional negligence. We hold that it was and affirm.

On Thursday, October 29, 1992, Blake was suffering from pain

---

in her right index finger and sought treatment from Wilborn, a board-certified dermatologist. A week earlier Wilborn had attended a seminar where he had been presented with a case involving glomerulus tumors of the fingertips. Although glomerulus tumors are very rare, Wilborn diagnosed Blake as having such a tumor based on a physical examination that took about five minutes. On Monday, November 2, Wilborn performed an in-office surgical procedure to remove Blake's fingernail and excise the tumor.

Blake returned to Wilborn's office on Tuesday, November 3, because her finger would not stop bleeding. At that time, Wilborn applied a pressure dressing and ordered Blake to return to his office on Friday, November 6. Instead she came to the office on Thursday, November 5, complaining of swelling, pain, discoloration, and compromised circulation in the finger. Wilborn then diagnosed Blake with a post-operative infection and prescribed the antibiotic Keflex.

Wilborn was absent from his office from November 6 through 13. On November 13, Blake returned to his office with the same basic complaints she had made on November 5. He then referred her to a vascular surgeon. Two-thirds of her finger had to be amputated because of gangrene. A pathology report showed that Blake in fact had a hemangioma tumor.

Dr. Jacob Rispler, a board-certified dermatologist, was Blake's expert witness. His testimony was presented to the jury through the reading of his deposition at trial. Based on his review of Blake's medical chart and other matters of record, Rispler testified that it was unclear whether her finger showed signs of infection when she first appeared at Wilborn's office on October 29. According to Rispler, "an infection would have to be ruled out before [surgery] was anticipated." When asked to identify diagnostic tools which could have been used to determine whether a tumor was present, Rispler responded that Wilborn could have ordered an x-ray or a culture of the finger or could have performed blood work. Rispler testified that at least one of those diagnostic tests "should have been done" before surgery was undertaken and that an x-ray probably would have confirmed the absence of a glomerulus tumor. Rispler opined that, insofar as surgical removal of the tumor was concerned, "the standard of care" required Wilborn to refer Blake to a hand or vascular surgeon or to perform the surgery in a sterile, outpatient operating room rather than in his office. Rispler noted that different surgical techniques are used for removal of glomerulus tumors and hemangioma tumors. When asked to specify the differences, he acknowledged that it was outside his expertise as he refers all surgical patients to experienced surgeons.

Rispler further testified that when Blake returned to Wilborn's office on November 3 with continued bleeding, "the standard of care

would have been to immediately call either a vascular and/or hand surgeon, even a general surgeon and have somebody — expert in this area help you with the postoperative course." According to Rispler, Wilborn should have prescribed an antibiotic on November 3 and should not have applied a pressure dressing for more than a few hours because it can compromise circulation. Rispler also condemned Wilborn's prescription of Keflex on November 5, because Rispler thought a staphylococcus infection was indicated at that point, and "Keflex is never used as a treatment for staphylococcus infection." Rispler testified that Wilborn's overall treatment of Blake's finger did not meet the applicable standard of care and that, in his opinion, amputation of the finger would not have been necessary if "the standard of care" had been met.

1. Wilborn charges the trial court with error in denying his motions for directed verdict and judgment notwithstanding the verdict.

A directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict.[1] The same standard applies to a motion for j.n.o.v.[2]

(a) Wilborn challenges the sufficiency of Rispler's testimony to show that in treating Blake he had breached the applicable standard of care.

> Generally, a cause of action will lie against a physician . . . who does not bring to the exercise of his profession a reasonable degree of care and skill. . . . "The standard of care and skill . . . is that which, under like circumstances and in similar conditions, is employed by the medical profession generally. [Cits.]" [Cits.][3]

Consequently, *Brannen v. Prince*[4] holds that testimony in a medical malpractice action showing nothing more than a mere difference in views as to medical judgment exercised is insufficient to support an action for malpractice. *Wagner v. Timms*[5] holds that testimony by the expert that "in his opinion certain procedures should have been utilized" also does not establish the standard.[6] In reliance on cases such as *Brannen* and *Wagner*, Wilborn argues that Rispler's testimony did not establish that he breached the standard of care. This

---

[1] *Norfolk Southern Corp. v. Smith*, 262 Ga. 80, 83-84 (2) (414 SE2d 485) (1992).
[2] *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85) (1993).
[3] *Lorentzson v. Rowell*, 171 Ga. App. 821, 824 (321 SE2d 341) (1984).
[4] 204 Ga. App. 866, 867 (2) (421 SE2d 76) (1992).
[5] 158 Ga. App. 538, 539 (1) (281 SE2d 295) (1981).
[6] (Emphasis omitted.) Id.

argument is without merit. In numerous regards, Rispler testified that Wilborn's treatment of Blake's finger should have been performed in a different manner and did not comport with the standard of care.

(b) Wilborn asserts that Rispler's testimony was insufficient because he failed to state in his deposition that he was familiar with the applicable standard of care.

Although Rispler averred in his OCGA § 9-11-9.1 affidavit that he was familiar with the applicable standard, he did not repeat this averment in his deposition. But the trial court charged the jury on the applicable standard, and Rispler's qualifications as set forth in the deposition authorized the jury to find that he was familiar with it. The jury was authorized to find that in testifying concerning requirements imposed by "the standard of care," Rispler was referring to the applicable standard under Georgia law.

(c) Wilborn also challenges the sufficiency of Rispler's deposition testimony on the ground that it was not based on properly framed hypothetical questions.

Rispler's opinions were based on facts which were admitted through the testimony of witnesses at trial and documentary evidence. "For an expert to give his opinion based upon a certain state of facts, those facts must be supported by evidence admitted into the record."[7] Wilborn has waived his complaint as to the form of the questions by failing to raise any objections on that ground at trial.

2. Wilborn next contends that the trial court erred in failing to construe self-contradictory testimony of Rispler against Blake.

The rule relied on by Wilborn is that "where a party offers himself as a witness and his testimony is self-contradictory, vague, or equivocal, his testimony is to be construed most strongly against him. [Cit.]"[8] "This rule applies only to the testimony of a party to the suit who offers himself as a witness and not to the testimony of a witness who is not a party. [Cit.]"[9] The self-contradictory testimony rule does not apply to expert witnesses.[10] Moreover, it does not appear that Wilborn sought to invoke the rule against Rispler or that Rispler's testimony was self-contradictory. We, therefore, find no merit in this enumeration.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

---

[7] (Footnote omitted.) *Columbus v. State*, 270 Ga. 658, 666 (5) (513 SE2d 498) (1999).
[8] *Manees v. Scicchitano*, 122 Ga. App. 591, 592 (1) (b) (178 SE2d 262) (1970).
[9] Id.
[10] *Ezor v. Thompson*, 241 Ga. App. 275, 276 (1) (526 SE2d 609) (1999).

*Sumner & Riexinger, Stephen P. Riexinger,* for appellant.
*Gibson & Spivey, Douglas L. Gibson,* for appellee.