**FIFTH DIVISION
MCFADDEN, C. J.,
MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 14, 2020**

# In the Court of Appeals of Georgia

A19A1751, A19A1752. RHOADES v. MCCORMACK et al.; and
   vice versa.

MCMILLIAN, Presiding Judge.

After Lauren Rhoades suffered facial burns while undergoing a oral surgical procedure for temporomandibular joint syndrome ("TMJ"), she brought a medical/dental malpractice action against William Robinson McCormack, DMD, the oral surgeon who performed the procedure, and Macon Oral and Maxillofacial Surgery, P.C. (collectively "Defendants").[1] The trial court directed a verdict in favor of Defendants at the conclusion of Rhoades' case-in-chief and entered final judgment for Defendants accordingly. Rhoades appeals from that ruling in Case No. A19A1751. In Case No. A19A1752, Defendants appeal from the trial court's denial

---

[1] Rhoades also sued the hospital where the surgery was performed but that claim settled prior to trial, and the hospital was dismissed with prejudice.

of their motion to dismiss Rhoades' notice of appeal on the grounds that Rhoades failed to timely file the trial transcript. As more fully set forth below, we find a verdict was properly directed in this case, and thus affirm the trial court's order entering judgment in favor of Defendants. Because that affirmance renders the denial of Defendants' motion to dismiss moot, we dismiss the appeal in Case No. A19A1752.

*Case No. A19A1751.*

1. We turn first to Rhoades' appeal from the grant of a directed verdict in favor of Defendants on her professional negligence claims.

> (1) A directed verdict is authorized only where the evidence, with all reasonable deductions and construed in favor of the nonmovant, demands a particular verdict. OCGA § 9-11-50 (a). But where any evidence or some evidence exists to support a jury issue on the nonmovant's claims, a directed verdict is improper. (2) This Court conducts a de novo review on appeal from the grant of a directed verdict, and we will uphold a directed verdict only if all of the evidence demands it.

(Citation and punctuation omitted.) *Sun Nurseries v. Lake Erma, LLC*, 316 Ga. App. 832, 835 (730 SE2d 556) (2012). See also *Smith v. Rodillo*, 330 Ga. App. 365, 365 (1) (765 SE2d 432) (2014) (physical precedent only).

The record shows that Rhoades suffered from temporomandibular joint pain. At the time Rhoades first consulted Dr. McCormack, she was in extreme pain and her jaw on her right side had become locked. After more conservative treatments failed, Dr. McCormack performed intraoral surgery on Rhoades on September 23, 2015. The procedure required making cuts in a certain joint, and an oscillating saw was used to perform this part of the operation.

The operation lasted approximately 2.5 hours and was performed under general anesthesia. Immediately after the surgery, Dr. McCormack noticed that Rhoades' face and lips were bruised and swollen, but attributed it to the normal swelling typically observed after this type of surgery. Although Dr. McCormack testified that he was aware that the hand piece of the oscillating saw could overheat during the surgery and potentially burn the patient, he did not believe that Rhodes had been burned during the surgery because he never felt the hand piece heat up, and there had been no other incidents with any of the other equipment used during the surgery that would have resulted in burns. However, after Rhoades' condition did not improve as expected, Dr. McCormack referred her to a plastic surgeon, who diagnosed her with second to third degree burns.

As for the cause of the burns, Dr. McCormack testified that he did not know how they happened, but "the only thing that makes any sense, that it would have to have been the hand piece [on the oscillating saw] malfunctioning and . . . directly transmitting heat from it to these retractors that are laying on the face." Dr. McCormack also testified that he recognized that these devices can overheat, and the safety protocols require the doctor to cycle the device on and off to prevent overheating. A conservative estimate would be to cycle the saw every ten seconds, but due to the nature of the surgery here and the need to see clearly the area being operated on, Dr. McCormack stopped the saw every five seconds at most. He said another safety measure would be for the doctor to be aware of where the retractors and hand piece were placed in relation to the patient's face. Dr. McCormack agreed that he was the captain of the ship during Rhoades' surgery, and that being captain of the ship includes ensuring the safe operation of any surgical tools or instruments utilized during a surgical procedure.

Rhoades' expert, Dr. Hamlet Garabedian, testified that in his opinion Rhoades was burned because the hand piece of the oscillating saw overheated, which he also identified as a known risk while using the saw. He testified that because the hand piece it is known to overheat, the standard of care requires the surgeon to take certain

4

steps to prevent the patient from being burned. One of those measures is to take periodic breaks, or cycling, to allow the saw to cool down. He said the surgeon can also tell if the device is overheating by touch, at which point the surgeon should stop the procedure to allow it to cool down. Also, the surgeon could try to keep the hand piece from touching the skin, but he opined it was very difficult to do in this type of procedure because of the very narrow space in which the surgeon is working. Personally, Dr. Garabedian would put a moist towel on the patient's cheek extending over the skin, which creates a layer of insulation, and he opined that a surgeon using moist towels combined with cycling should be able to avoid burns. As to monitoring the device, he said that the surgeon should cycle and pay attention, and that the surgical gloves, particularly if you double glove, may give the surgeon a delayed sensation.

As to the deviation from the standard of care, Dr. Garabedian opined that Dr. McCormack breached the standard "[b]ased on the fact that hand pieces can heat up and do heat up from time to time, being cognizant of the fact, there are ways to take measures to prevent it from touching the skin. That would be a way to prevent injuries and that would be the deviation." He said the formation of his opinion "is based on the fact that there's a burn and there are only two ways this could have

5

happened, either the cautery device could have ignited or caused the burn or the hand piece could have heated up and caused the burn." He said that he assumed the only device used was the saw since the other device was not mentioned in the operative notes, and he thus assumed that is how Rhoades was burned.

However, on the specific measures that Dr. McCormack should have taken, Dr. Garabedian testified that he could not draw the conclusion that Dr. McCormack knew the hand piece was heating up because there are situations when it can heat up without the surgeon being aware of it and he was "certain" if Dr. McCormack felt it heating up he would have cycled it off. Dr. Garabedian also was not prepared to testify that Dr. McCormack did not cycle the instrument properly, and because the Hospital provided the equipment, it was in charge of maintaining it properly. He reiterated that it was unavoidable that the hand piece would touch the face and retractors, so the touching alone was not a violation of the standard of care. Dr. Garabedian also testified that there was no mention in the notes that Dr. McCormack used wet gauzes to protect the patient's face, but on cross-examination, he clarified that the use of moist towels is at the doctor's "discretion" and "[n]ot using the moist towels does not violate the standard of care."

6

Following the presentation of Rhoades' case-in-chief, Defendants moved for a directed verdict, arguing that Rhoades was basing her case on a *res ipsa* theory and that she had failed to present expert testimony that Dr. McCormack breached the standard of care by means of a specific act or omission as required by Georgia law. The trial court agreed, granted the motion, and entered judgment accordingly. This appeal followed.

The essential elements of a medical malpractice action are: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." (Citation and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003).

> Res ipsa loquitur is not applicable in medical malpractice cases in Georgia. In a medical malpractice case, the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case. The jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill. Expert testimony must also set forth how or in what way the defendant deviated from the parameters of the acceptable professional conduct.

7

(Citations and punctuation omitted.) *Kapsch v. Stowers*, 209 Ga. App. 767, 767 (1) (434 SE2d 539) (1993).

(a) Rhoades first argues that her expert, Dr. Garabedian, testified that Dr. McCormack fell below the standard of care in his intraoperative treatment of Rhoades by failing to take preventative measures to prevent facial burns. Both Dr. Garabedian and Dr. McCormack testified that Rhoades was most likely burned because the oscillating saw overheated and came in contact with the retractors used during the surgery, and that the risk of the saw overheating during the surgery was a known risk which required steps to prevent it from burning the patient. Although Dr. Garabedian testified that in his opinion Rhoades' injury was preventable, he failed to point to any measures that Dr. McCormack should have taken consistent with the standard of care. *Wilborn v. Blake* 242 Ga. App. 653, 655 (1) (530 SE2d 778) (2000) ("testimony by then expert that in his opinion certain procedures should have been utilized does not establish the standard [of care].") (citation and punctuation omitted). Although Dr. Garabedian generally testified that Dr. McCormack breached the standard of care by failing to prevent the injury, when questioned about what measures should have been taken, he effectively eliminated from consideration any act or omission by Dr. McCormack that would have constituted a breach of the standard of care. Based on

8

the record before us, Dr. Garabedian, "in effect, infers negligence upon an unintended result." *Hawkins v. OB-GYN Assocs., P.A.,* 290 Ga. App. 892, 894 (1) (660 SE2d 835) (2008). "Georgia courts. however, have expressly ruled that the doctrine of res ipsa loquitur does not apply in a malpractice case. An unintended result does not raise an inference of negligence. It is presumed that medical or surgical services were performed in an ordinarily skillful manner." (Citation and punctuation omitted.) Id. In the absence of evidence to support a breach of the standard of care, the trial court properly directed a verdict for Dr. McCormack.

(b) Rhoades also points to Dr. McCormack's testimony that he was the "captain of the ship," and argues this testimony constituted an admission against interest, with the result that any negligent act during the surgery should be imputed to him. See *Reed v. Adventist Health Systems/Sunbelt*, 181 Ga. App. 750, 752 (1) (353 SE2d 523) (1987) (explaining when negligence of operating room personnel will be imputed to surgeon or surgeons in charge as a matter of law). First, we note that Rhoades did not make this argument below in response to Defendants' motion for directed verdict. Further, even if she had, Rhoades does not point to any negligent act committed by any of the other surgical personnel during the surgery, and she submitted no expert testimony that anyone else in the operating room committed an act of professional

negligence resulting in the injuries here. Accordingly, this contention is also unavailing, and the trial court's order must be affirmed.

*Case No. A19A1752*

2. In light of our affirmance of the trial court's order granting a directed verdict to Defendants and entering judgment in their favor, we need not address whether the trial court erred in denying the Defendants' motion to dismiss the appeal from that order. Instead, we dismiss as moot the Defendants' appeal in Case No. A19A1752. *280 Partners, LLC v. Bank of North Ga.*, 352 Ga. App. 605, 612 (2) (835 SE2d 377) (2019).

*Judgment affirmed in Case No. A19A1751. Appeal dismissed as moot in Case No. A19A1752. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*